**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David R. CANDELARIA,**
**Defendant-Appellant.**

**No. 81–1767.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1982.

Decided April 26, 1983.

Sally Gustafson, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Allen R. Bentley, Seattle, Wash., for defendant-appellant.

Before BROWNING, TUTTLE,* and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

On May 24, 1981, David R. Candelaria entered a telephone booth at Fort Lewis, Washington, dialed the 911 emergency number, and said, "There is a bomb threat at Madigan Club, okay." When he emerged, he was arrested by military police who were conducting surveillance of the booth because of a pattern of such calls from that number. Since he was not a member of the military, Candelaria was released within the hour and advised that subsequent action would be taken by the proper authorities.

Shortly thereafter, the military police notified the FBI of the incident and on July 7, 1981, 44 days after the first arrest, a one-count indictment was returned charging Candelaria with communicating a false bomb threat in violation of 18 U.S.C. § 844(e) (1976).[1]

Before his trial, Candelaria moved to dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161(b) (1976), on the ground that the 30-day period within which an indictment must issue ran from the day of his arrest by military police on May 24th and had expired by the time the indictment issued on July 7th. The motion was denied.

At his trial, Candelaria admitted making the call, but testified that he had no malicious reason for doing so. There was also testimony that he had been drinking on the night of the call. From these facts and the

---

* The Honorable Elbert Parr Tuttle, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

1. 18 U.S.C. § 844(e) (1976) provides:

   Whoever, through the use of the ... telephone ... willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made ... unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of an explosive shall be imprisoned for not more than five years or fined not more than $5,000, or both.

words spoken when making the call, defense counsel argued in closing that the call was a joke or prank and therefore not subject to punishment under the statute. Accordingly, he requested the following jury instruction:

> A false bomb report made as a joke or jest or prank is not a crime. If you cannot find, beyond a reasonable doubt, that the false statement was not a joke, jest, or prank, you must find the defendant not guilty.

Although the district judge gave extensive instructions on the issues of malice and intent, he refused to give the proposed instruction.

Candelaria was convicted as charged. On appeal, he contends that the indictment was untimely under the Speedy Trial Act, that the refusal of the trial judge to give the proposed jury instruction was reversible error, and also that certain remarks of the prosecutor during closing argument deprived him of a fair trial. We find Candelaria's contentions to be without merit and affirm the conviction.

### I. *The Speedy Trial Act Claim*

Candelaria first contends that the 30-day time limit of section 3161(b) of the Speedy Trial Act began to run on May 24th, the day of his arrest by the military, even though he was quickly released and no formal charges were filed against him. He argues that, under section 3162(a)(1), the district court erred in refusing to dismiss the indictment returned 44 days later.

Section 3161(b) provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.
>
> . . . .

Sanctions for failure to comply with this requirement appear in section 3162(a)(1):

> If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . . such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.
>
> . . . .

Candelaria characterizes it as "ambiguous" that sanctions are expressly provided only for individuals charged with an offense, while the 30-day time period required by section 3161(b) appears to apply to all arrestees, regardless of whether charges have been filed. To resolve this ambiguity, Candelaria suggests that we extend the sanction of dismissal to all arrestees.

We think that section 3161(b) may not properly be construed independently of section 3162(a)(1) and the purposes of the Speedy Trial Act. By its very terms, the statute's mandatory dismissal sanction is available only "in the case of [an] individual *against whom a complaint is filed* charging such individual with an offense." 18 U.S.C. § 3162(a)(1) (emphasis added). Since Congress was explicit about both the sanction created and who may invoke it, we seriously doubt that it intended section 3161(b) to extend to the broader class of all arrested persons, including those neither charged nor otherwise subject to some continuing restraint. A contrary reading would cause us to presume that Congress thought it important to require an indictment within 30 days of every arrest but unnecessary to provide some arrestees a means to enforce that right. We see no reason to extend the Act's protections to all persons arrested but not charged with an offense.[2]

The Eighth Circuit recently considered this question in *United States v. Jones,* 676 F.2d 327 (8th Cir.1982), and we agree generally with its analysis. There, too, the defendant was arrested, released, and told he

---

**2.** We need not consider what restraint, if any, short of formal charges would be sufficient to invoke the dismissal sanction. Here, appellant argues only that he was "under the cloud of a potential prosecution" because of his arrest.

That is clearly insufficient. *See United States v. Hillegas,* 578 F.2d 453, 458 & n. 4 (2d Cir. 1978); *United States v. Lopez,* 426 F.Supp. 380, 383–86 (S.D.N.Y.1977).

would be "notified." No criminal charges were filed until some 10 months later, when an indictment was returned. The defendant moved to dismiss the indictment under section 3162(a)(1), and the district court denied the motion. In affirming, the Eighth Circuit looked to the plain terms of section 3162(a)(1) and concluded that it effectively limits section 3161(b) to situations where formal charges have been filed. *Id.* at 329. The court observed that this same limitation occurs in other provisions of the Act, *id.* at 329–30, and that "the legislative history, while less than precise, does reflect an assumption by Congress that any arrested individual would also be a 'charged' or 'accused' individual." *Id.* at 331. The court was particularly mindful of Congress's intention through the Act " 'to give effect to the sixth amendment right to a speedy trial....,' " *id.* at 331 (quoting legislative history from *United States v. MacDonald,* 456 U.S. 1, 7 n. 7, 102 S.Ct. 1497, 1501 n. 7, 71 L.Ed.2d 696 (1982)), and of the Supreme Court's view that the Act, just as the sixth amendment, requires charges to be pending before its protections can be invoked. *Id. See also United States v. Hillegas,* 578 F.2d 453, 456 (2d Cir.1978) (purpose of the Act is "to expedite the processing of *pending* criminal proceedings").

■ Candelaria was not a " 'charged' or 'accused' individual" until July 7th, when the indictment was returned. Accordingly, we hold that there was no violation of the Speedy Trial Act.

## II.   *The Jury Instruction*

■ Candelaria next argues that he was entitled to have the jury instructed that if they considered his actions merely a joke or prank, they must find him not guilty. Candelaria's argument presents the interesting question whether 18 U.S.C. § 844(e) contemplates criminal sanctions for threats made in jest.[3] However, we need not reach that issue. While it is true that a defendant is entitled to an instruction on his de-

fense theory if that theory has a basis in law and the record, *see, e.g., United States v. Davis,* 597 F.2d 1237, 1239 (9th Cir.1979), we fail to see what evidence in the record supports Candelaria's theory. The testimony to which Candelaria points may well go to the question of intent; on that question there was adequate instruction. The testimony does not, however, suggest that the threat was a joke. Accordingly, we do not think the district judge was obliged to instruct on that theory.

## III.   *The Prosecutor's Remarks*

Finally, Candelaria contends that certain remarks of the prosecutor in closing argument deprived him of a fair trial. Specifically, he objects to the prosecutor's assertions, while arguing the element of intent, that Candelaria would not likely have been joking "in this day in [sic] age when people are subjected to threats, to bombs in airplanes .... [T]his is an age when you don't joke about things like that." Candelaria contends that the statement departed from the evidence and elicited a verdict based on emotion, not reason.

■ The joke theory was, however, a legitimate issue for comment. Defense counsel argued the point in his own closing and the prosecution was entitled to respond to it. *See United States v. Fulton,* 549 F.2d 1325, 1328 (9th Cir.1977). Counsel are entitled to reasonable latitude in closing argument, including references like these to matters within the common knowledge of all reasonable people. *See Tenorio v. United States,* 390 F.2d 96, 99 (9th Cir.), *cert. denied,* 393 U.S. 874, 89 S.Ct. 169, 21 L.Ed.2d 145 (1968). We do not believe that these remarks exceeded the proper scope.

The conviction is AFFIRMED.

---

3.   For an example of how we have approached such questions in another context, see *Roy v. United States,* 416 F.2d 874, 876–78 (9th Cir.

1969). *But cf. Rogers v. United States,* 422 U.S. 35, 43, 95 S.Ct. 2091, 2096–97, 45 L.Ed.2d 1 (1975) (Marshall, J., concurring).