967 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Miguel MUNGIA, Defendant-Appellant.
 No. 91-30239.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 8, 1992.*
Decided May 29, 1992.
 
 1
 Before WALLACE, Chief Judge, GOODWIN, Circuit Judge, and LEVI,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Miguel Mungia appeals his jury conviction for possession with intent to distribute heroin and for using a firearm during the commission of a drug trafficking offense, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1). He contends his indictment should have been dismissed as violative of the Speedy Trial Act and that he was denied a fair trial because the district court improperly admitted an informant's hearsay statements under the co-conspirator exception to the hearsay rule. We affirm the conviction.
 
 I. BACKGROUND
 
 4
 Mungia was arrested on October 14, 1991, by officers of the Salem, Oregon police department in the parking lot of an Albertson's grocery store. The arrest stemmed from an investigation by Officer Tim Diede of the Salem Police Department and Agent Thomas Walsh of the U.S. Drug Enforcement Administration. Walsh and Diede had provided money to an undercover informant, Alvaro Plancarte, to purchase a small quantity of heroin from co-defendant Jose Flores. After that purchase, Plancarte negotiated with Flores to purchase approximately 250 grams (10 ounces) of heroin for a price of $23,000. Over Mungia's objection, Plancarte testified that Flores twice told him that Mungia was the source of the heroin.
 
 
 5
 Plancarte and Flores arranged for the transaction to take place on October 14, 1991, in the Albertson's parking lot. On October 14, law enforcement officers observed Flores drive to the parking lot, enter the store, and emerge a short time later with Mungia. Flores and Mungia walked to a small pickup truck parked in the lot, where they joined co-defendant Mario Adame. Mungia got into the driver's side and Flores got into the passenger side of the truck. Minutes later, Salem Police Department officers arrested Adame, Flores and Mungia. Mungia consented to a search of the truck, and police discovered two loaded pistols, a pager keyed to a number Flores had given to Plancarte, and approximately 250 grams of heroin.
 
 
 6
 On October 16, 1991, Mungia made his initial appearance in federal court, where a federal complaint and certificate of arrest were filed. A preliminary hearing was held October 18 before a federal magistrate, who found probable cause and ordered Mungia detained. On November 15, 1991, the grand jury indicted Mungia, Flores and Adame on charges of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) [Count One], and of using a firearm during the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) [Count Two].
 
 
 7
 All three defendants moved to dismiss their indictments on the ground that they had been issued in violation of the Speedy Trial Act, which requires that a defendant be indicted within 30 days of arrest. 18 U.S.C. § 3161(b). The district court denied the motion, holding that 18 U.S.C. § 3161(a)(1), the sanctions provision for violations of the Speedy Trial Act, is triggered only after 30 days have elapsed since the filing of a federal complaint.
 
 
 8
 Flores and Adame pled guilty; Mungia pled not guilty and proceeded to trial. Mungia moved in limine to exclude Plancarte's "source" testimony on hearsay grounds. The district court denied the motion. Mungia was tried before a jury on February 20-28, 1991, and was found guilty on both counts. After trial, Mungia moved for a new trial based on the court's admission of Plancarte's testimony. The district court denied the motion. On July 8, 1991, Judge Redden sentenced Mungia to 63 months in prison on Count One and 60 months on Count Two, to be served consecutively, followed by five years of supervised release. Mungia timely appealed.
 
 II. DISCUSSION
 A. The Speedy Trial Act Argument
 
 9
 Mungia contends that because 32 days elapsed between his October 14 arrest and his November 15 indictment, the indictment violated the Speedy Trial Act and therefore should have been dismissed by the district court.[1] The proper interpretation of the Speedy Trial Act raises a question of law subject to de novo review. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984).
 
 
 10
 Section 3161(b) of the Speedy Trial Act provides:
 
 
 11
 Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.
 
 
 12
 18 U.S.C. § 3161(b). Section 3162(a)(1) specifies the appropriate sanction for violations of section 3161(b). It provides:
 
 
 13
 If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) ... such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.
 
 
 14
 18 U.S.C. § 3162(a)(1).
 
 
 15
 In denying Mungia's motion to dismiss, the trial court held that dismissal of an indictment is required under section 3162(a)(1) only where a defendant has not been indicted within 30 days of the filing of a federal complaint. The district judge noted initially that "the sanction Congress created for violation of the thirty-day limit for indictment was made applicable expressly to 'the case of any individual against whom a complaint is filed.' " The judge acknowledged both that the plain language of section 3161(b) requires that a defendant be indicted within 30 days of arrest and that Mungia's certificate of arrest expressly stated that the date of arrest for Speedy Trial Act purposes was October 14. Observing that the section 3162(a)(1) applied only "to those individuals against whom a complaint has been filed," however, the district court held that the dismissal sanction was inapplicable to Mungia because he was "indicted within the thirty days from the date on which charges were filed."
 
 
 16
 The district court apparently perceived an inconsistency between section 3161(b), which refers to a defendant's "arrest," and section 3162(a)(1), which refers to dismissal of the "complaint." The statutory language and case law make clear that a federal arrest, rather than the subsequent filing of a complaint, is the triggering event for purposes of the 30-day speedy trial period under both section 3161(b) and section 3162(a)(1). Section 3161(b) explicitly states that the 30-day period is measured from the date of arrest, and section 3162(a)(1) incorporates this period by reference. See United States v. Antonio, 705 F.2d 1483, 1485 (9th Cir.1983) (holding that section 3162(a)(1) applies "if the indictment has not been returned within 30 days of the arrest"); see also id. at 1484 (noting that section 3161(b) "directs indictments be returned within 30 days after a defendant has been arrested" and that section 3162(a)(1) provides a specific sanction "where the government fails to obtain an indictment within that time").
 
 
 17
 One exception to this general rule has been recognized. In United States v. Candelaria, 704 F.2d 1129 (9th Cir.1983), we read sections 3161(b) and 3162(a)(1) together to mean that the 30-day time limit does not apply in the case of a defendant who is arrested but released without charge or other restraint. See id. at 1131; see also Antonio, 705 F.2d at 1485 n. 1 (construing Candelaria ). In recognizing this exception to the 30-day rule, the court in Candelaria interpreted section 3161(b) to apply only to persons who are arrested and subsequently charged or otherwise restrained. See Candelaria, 704 F.2d at 1131 & n. 2. In so doing, the court declined to presume that Congress intended there to be a gap between the section 3161(b) right and the section 3162(a)(1) remedy. See id.
 
 
 18
 Under the law of this circuit, when an individual is arrested and subsequently charged or held in custody, the Speedy Trial Act's 30-day clock begins to run from the date of the individual's arrest. As the government points out, however, the arrest must be a federal arrest for the 30-day speedy trial clock to be activated. See United States v. Adams, 694 F.2d 200, 202 (9th Cir.1982), cert. denied, 462 U.S. 1118 (1983). A defendant's arrest by state officers, though pursuant to a joint federal-state investigation, does not trigger the 30-day clock. Id.; accord United States v. Manuel, 706 F.2d 908, 915 (9th Cir.1983).
 
 
 19
 Mungia's October 14 arrest was not a triggering event for Speedy Trial Act purposes because the arrest was made by Salem police. No federal arrest took place until Mungia was transferred to federal custody on October 16. Mungia's November 15 indictment therefore did not violate the Act. See United States v. Redmond, 803 F.2d 438, 440 n. 7 (9th Cir.1986) (noting that "[c]ourts have found that a person is not arrested for purposes of the Speedy Trial Act until he is taken into custody after a federal arrest for the purpose of responding to a federal charge"), cert. denied, 481 U.S. 1032 (1987).
 
 B. Admission of the Informant's Testimony
 
 20
 At trial, informant Plancarte testified that during his negotiations with Flores there was a discussion about where the heroin would be obtained and that Flores twice told Plancarte that Mungia was the "source" of the heroin. Mungia contends that the district court erred in admitting this testimony under the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E), because there was not sufficient independent evidence of a conspiracy and because the statement was not made in furtherance of the conspiracy.
 
 1. Rule 801
 
 21
 Rule 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Before the court may admit testimony under this rule, the government has the burden of proving by a preponderance of evidence (1) the existence of a conspiracy, and (2) that the proffered statement was made during the course of the conspiracy and in furtherance of the objectives of the conspiracy. See Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Smith, 893 F.2d 1573, 1578 (9th Cir.1990). Although the trial court may consider the hearsay statement in determining whether a conspiracy existed, the court must find some "independent proof" of the existence of the conspiracy. Smith, 893 F.2d at 1578; accord United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir.1988).
 
 2. Standard of review
 
 22
 Prior to Bourjaily, this circuit reviewed de novo the district court's preliminary determination that a conspiracy existed involving the defendant. See United States v. Smith, 790 F.2d 789, 794 (9th Cir.1986). Bourjaily suggests, however, that this court should now review such findings only for clear error. See 483 U.S. at 181 (observing that "[w]e have no reason to believe that the District Court's factfinding of this point was clearly erroneous"). In Mungia's case, the result would be the same under either standard. The trial court's finding that the statement was made during the course and in furtherance of the conspiracy is reviewed under the clearly erroneous standard. United States v. Zavala-Serra, 853 F.2d 1512, 1515 (9th Cir.1988).
 
 3. Discussion
 
 23
 Mungia argues that the only independent evidence of a conspiracy is the fact that the three defendants were arrested in the same vehicle where heroin and firearms were found and that this evidence is insufficient under United States v. Sanchez-Mata, 925 F.2d 1166 (9th Cir.1991). Mungia's reliance on Sanchez-Mata is misplaced.
 
 
 24
 In Sanchez-Mata, this court held that there was insufficient evidence to convict the defendant of conspiracy to possess marijuana where the defendant was merely a passenger in the car where the drugs were found and had no prior connection to the car or the other conspirators. See id. at 1167-68. In Mungia's case, however, Mungia met Flores at the pre-arranged location for the heroin sale, walked directly to the vehicle containing the heroin, and got in on the driver's side. He indicated to Agent Walsh that he was the driver of the vehicle and responsible for it. In addition, Flores earlier had introduced Plancarte to Mungia by telephone while arranging the final heroin transaction and Mungia had discussed the sale with Plancarte.
 
 
 25
 Mungia also maintains that the government failed to prove that Flores' statement to Plancarte was made in furtherance of the conspiracy. For a statement to be considered "in furtherance" of a conspiracy, it must in some way advance the objectives of the conspiracy. United States v. Tille, 729 F.2d 615, 620 (9th Cir.), cert. denied, 469 U.S. 845 (1984). Mere narrative declarations and casual admissions of culpability are not statements in furtherance of the conspiracy. See United States v. Bibbero, 749 F.2d 581, 583-85 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985).
 
 
 26
 Mungia argues that the information that he was the source of the heroin was "superfluous" to Plancarte's belief that Flores would sell him heroin because Flores had sold Plancarte heroin in the past. In United States v. Moody, 778 F.2d 1380 (9th Cir.1985), amended, 791 F.2d 707 (9th Cir.1986), we held that a co-conspirator's statement concerning future plans to obtain drugs from Thailand was made in furtherance of the conspiracy. See 778 F.2d at 1382. In the instant case, Plancarte's testimony concerning Flores' statements about Mungia indicates that they were more than casual comments. Flores made the statements in the course of negotiating with a customer over a large sale of heroin. Plancarte testified that while discussing the second heroin sale he inquired where the heroin would come from and Flores replied that Mungia was the source. Flores telephoned Mungia in Plancarte's presence and allowed Plancarte to speak with Mungia concerning the sale. This evidence is sufficient to support an inference that Flores informed Plancarte about the source of the heroin in order to facilitate the second heroin sale by reassuring his customer that he in fact had a reliable supplier. The district court's finding was not clearly erroneous.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable David F. Levi, United States District Judge for the Eastern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The grand jury was in session between October 14 and November 15; thus no extension of the 30-day deadline was applicable. 18 U.S.C. § 3161(b)