**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raymond James HOSLETT,**
**Defendant–Appellant.**

**Nos. 91–50868, 91–50869.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1992.

Decided June 10, 1993.

---

Gerald V. Scotti, Beverly Hills, CA, for defendant-appellant.

Robert Brosio, Barbara M. Scheper, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before D.W. NELSON, REINHARDT, and KOZINSKI, Circuit Judges.

REINHARDT, Circuit Judge:

This case involves the Speedy Trial Act. As in all such cases, the pretrial history is somewhat complicated. In early 1990, FBI special agent John Kuhn was assigned to investigate a spree of bank robberies in Ventura County, California. In the course of his efforts, Kuhn compared photos of appellant Raymond James Hoslett, who was on federal parole for bank robbery, with bank surveillance photos and decided that Hoslett was the culprit. Kuhn contacted Hoslett's parole officer, who told the agent that an arrest warrant had already been issued for Hoslett on unrelated parole violations. The agent showed the parole officer the bank surveillance photos and he, too, identified the bank robber as Hoslett. FBI agents located Hoslett at his place of employment in late February 1990 and arrested him. During an interview at FBI headquarters, Kuhn told Hoslett that he was a suspect in the bank robberies and questioned him about them. In a subsequent search of Hoslett's vehicle, FBI agents seized a sawed off shotgun, which had no connection with the robberies, from the automobile's trunk.

Hoslett was returned to prison to await a formal parole revocation hearing. In June 1990, it was determined that he had violated his parole because he had admittedly failed a drug test and neglected to appear for further drug testing. The parole revocation panel recommended a ten month term of incarceration for the violations. The panel also informed the Regional Parole Commission Office about the bank robbery allegations. The Commission decided to revoke Hoslett's mandatory release parole but withheld a final disposition of his case pending receipt of further information regarding the bank robberies. In July 1990, the FBI wrote a letter to Hoslett's parole officer detailing the "conclusive" evidence it had accumulated regarding Hoslett's involvement in the bank robberies. The letter related that the Bureau would seek a federal bank robbery indictment against Hoslett and possibly an indictment on firearms charges as well. Although the Parole Commission was informed of the

FBI letter, it took no further action until late January 1991, when it issued a supplemental probable cause letter concerning the bank robbery and firearm allegations. After a hearing in March 1991, the Parole Commission found Hoslett guilty of these additional parole violations and ordered that he remain in custody until the expiration of his original sentence, June 5, 1991.

Although the United States Attorney's Office had instructed FBI agent Kuhn to prepare a prosecutive report in May 1990, Kuhn did not complete the report until January 1991 because of his work on unrelated investigations. In February 1991, the grand jury indicted Hoslett on four counts of bank robbery, one count of being a felon in possession of a firearm, and one count of possession of an unregistered firearm, all in case number CR–91–143. He was arraigned on these charges in March 1991. Hoslett subsequently filed a motion to suppress the evidence taken from his car. On May 20, 1991, at the urging of the district court, the government successfully moved for dismissal without prejudice of the firearm charges on the grounds of misjoinder. Hoslett was reindicted on those charges on June 11, 1991, in case number CR–91–533, and he subsequently moved to dismiss them for failure to bring him to trial within seventy days of indictment; he also filed a motion to suppress in the new case.

In the bank robbery case, the district court denied both Hoslett's motion to suppress and a later motion to dismiss the charges because he had not been indicted within thirty days of his arrest. A jury convicted him on all charges. Hoslett waived his right to a jury trial in the firearm case. After denying Hoslett's speedy trial and suppression motions in that case, the district judge found him guilty of being a felon in possession of a firearm but dismissed the possession of an unregistered firearm charge. The court sentenced Hoslett to 158 months on each bank robbery count followed by a term of supervised release of three years and to a term of 120 months followed by a term of supervised release of three years on the firearm charge. All sentences are concurrent.

Hoslett appeals his convictions in both cases. He contends that the judge erred in denying his pretrial motions.[1] He also argues that he was denied his Sixth Amendment right to effective assistance of counsel during the bank robbery trial due to an alleged conflict of interest. Finally, he claims that the district court erred in finding that his conduct during one of the robberies involved an express threat of death requiring an increased sentence.[2]

## I. Speedy Trial Act Claims

### A. Did the District Court Err in Denying Hoslett's Motion to Dismiss Based Upon Pre–Indictment Delay?

The Speedy Trial Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If the government fails to bring an indictment within thirty days after a suspect has been arrested on a charge and a complaint has been filed, then "such charge ... in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). For the dismissal sanction of section 3162(a)(1) to apply, a suspect must either be formally charged at the time of or following his arrest, or be subject to some continuing restraint imposed in connection with the charge on which he is eventually tried. *United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1049 (9th Cir.1990); *United States v. Candelaria,* 704 F.2d 1129, 1131 (9th Cir.1983); *accord United States v. Stead,* 745 F.2d 1170, 1172 (8th Cir.1984). We review legal questions regarding application of the Speedy Trial Act *de novo,* but factual findings are reviewed for clear error. *United States v. Nash,* 946 F.2d 679, 680 (9th Cir.1991).

Hoslett argues that in February 1990 he was arrested and held in connection with the bank robbery charges rather than for parole violations because: 1) Parole Commission records indicate that the parole violations warrant was not executed by the United States Marshals Service until six days after his arrest by the FBI; 2) after the FBI arrested Hoslett, its agents interrogated him regarding his involvement in the bank robberies; and 3) agent Kuhn referred to Hoslett as having been arrested for bank robbery in an FBI report. However, there is no dispute that a warrant for Hoslett's arrest for parole violations was issued in December 1989, a month before Hoslett became a suspect in the bank robberies. Also, it is undisputed that agent Kuhn informed Hoslett at the time of his arrest that he was being taken into custody for violating parole. Given the substantial evidence that supports it, the district court's factual finding that Hoslett's arrest in February 1990 was based upon his parole violations was not clearly erroneous. Thus, as of the commencement of his detention, Hoslett was being held on the parole offenses.

Hoslett next argues that he became subject to continuing restraint in connection with the bank robbery and firearm charges when the Parole Commission, relying on the FBI letter, made the decision to postpone final action on his parole revocation. He contends that even if the ten months the parole panel recommended he serve for the drug test violations are subtracted, he was subject to continuing restraint in connection with the criminal charges for nearly two months before his indictment. The government responds that Hoslett's situation is the same as that of a recaptured prisoner later criminally charged with escape. We have held that such persons are not, for the purposes of section 3161(b), subject to continuing detention in connection with the charges on which they are eventually tried. *United States v. Wilson,* 690 F.2d 1267, 1276 (9th Cir.1982), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983); *accord*

---

1. Hoslett does not appeal the denial of his motion to suppress in the bank robbery case.

2. Hoslett originally claimed that the district court improperly denied him sentence credit for the time he spent in prison on the parole viola-

tions. Both parties now agree that *United States v. Wilson,* —— U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), controls this issue and that the district court had no authority to grant custody credits.

*Stead,* 745 F.2d at 1170; *United States v. Zukowski,* 851 F.2d 174, 177 (7th Cir.), *cert. denied,* 488 U.S. 868, 109 S.Ct. 174, 102 L.Ed.2d 144 (1988). However, these cases are distinguishable because the prisoners would have been confined on their original sentences during the period between their recapture and indictment for escape in any event. Hoslett's claim is that he was subject to restraint that he would not have faced but for the criminal allegations.

More relevant are *United States v. Ray,* 768 F.2d 991, 996–97 (8th Cir.1985), *overruled on other grounds, Henderson v. United States,* 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986), and *Acha v. United States,* 910 F.2d 28, 30–31 (1st Cir.1990), which hold that if a defendant's bail or bond is revoked on account of acts that later form the basis of an indictment, the Speedy Trial Act is not implicated by the defendant's arrest and return to detention. While the reasoning of those decisions is somewhat formalistic, we agree with their basic thrust: 18 U.S.C. section 3161(b) requires something more than that the acts leading to detention be the same as those underlying the eventual criminal charge. Hoslett may be literally correct that he was detained "in connection with" the formal charges on which he was eventually tried, but we think that phrase must have a somewhat narrower meaning in this context.[3] The purpose of Hoslett's detention was to allow the Commission to obtain further information for its own proceedings. His detention was not on account of the government's need to gather evidence to obtain an indictment, which is one of the evils to which section 3161(b) is primarily directed. Therefore, we find that Hoslett's detention after the Parole Commission deferred final decision on revocation did not trigger the Speedy Trial Act because it was not "in connection with" the criminal charges on which he was later tried within the meaning of 18 U.S.C. section 3161(b).

We emphasize the limited nature of our ruling. There is no indication here that the government acted in bad faith or that the detention for the alleged parole violations was a .ruse for delay in obtaining an indictment. *See United States v. Cepeda–Luna,* 989 F.2d 353, 357–58 (9th Cir.1993). Although the FBI made the Parole Commission aware of the "conclusive" evidence it had accumulated against Hoslett, there is no evidence that the agency or the prosecutor attempted to manipulate the parole revocation process to keep Hoslett incarcerated. Furthermore, we offer no opinion regarding the length of time or under what circumstances the Parole Commission may postpone a revocation decision without running afoul of the due process clause or its own regulations. We decide only that under the facts present here no violation of section 3161(b) occurred.

**B.** ***Did the District Court Err in Denying Hoslett's Motion to Dismiss the Firearm Counts For Pretrial Delay?***

A defendant must be brought to trial within seventy days of indictment or his initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1).[4] However, there are nine statutory exclusions from the computation of the seventy day period. *See* section 3161(h). There is no dispute that 134 calendar days elapsed between Hoslett's original arraignment and the date he filed his motion to dismiss in the firearms case, the end-date for computing the seventy day period for those charges. *See United States v. Wirsing,* 867 F.2d 1227, 1230 (9th Cir.1989) (in ruling on motion to dismiss for Speedy Trial

---

3. Under Hoslett's approach the Speedy Trial Act would have been violated had the Parole Commission initially found him guilty of the bank robbery and firearm charges and ordered him to serve out his original sentence. His detention then would also have been literally "in connection with" the charges on which he was eventually tried.

4. The relevant section of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), states: "[T]he trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."

Hoslett was indicted on February 15, 1991, but did not make an initial appearance until his March 18, 1991 arraignment. Therefore, the seventy day period runs from March 18, 1991.

Act, last day to be considered is date on which motion is filed).

■ Hoslett argues that eighty-seven non-excludable days elapsed between his original arraignment on the firearm charges and his trial, in violation of the Speedy Trial Act's seventy day limitation. He is plainly incorrect about five.[5] As to the remainder, the government maintains that no violation occurred here because of certain excludable periods that transpired involving a number of those days. First, it contends that the district court expressly designated two periods for the preparation of pretrial motions and that the designated time is excludable.[6] Second, it urges that the motion to suppress filed on April 29th in case no. CR–91–143 should be considered "pending" in case no. CR–91–533 from the date the latter case was filed and that the period during which the motion remained "pending" in the latter case is excludable under 18 U.S.C. section 3161(h)(1)(F) (delay on account of pretrial motions from their filing to hearing tolls speedy trial clock). We disagree.

### 1. *Relevant Speedy Trial Act Dates*

March 18, 1991 Hoslett arraigned in case no. CR–91–143 and district court orders all motions filed by April 29.

April 29, 1991 Hoslett files motions to suppress evidence and to sever firearm counts for misjoinder.

May 20, 1991 District court grants government's motion for dismissal of firearm counts without prejudice.

June 5, 1991 Hoslett scheduled to be released; government files motion for detention.

June 10, 1991 District court denies the detention motion.

June 11, 1991 Hoslett indicted on the firearm counts in case no. CR–91–533 and a detention order is issued.

June 17, 1991 Hoslett arraigned on the firearm charges and bail set.

July 3, 1991 Hoslett files motion to dismiss for delay in prosecution in bank robbery case.

July 8, 1991 District court denies motions to suppress evidence and dismiss in bank robbery case.

July 29, 1991 Hoslett files motion to sever counts in firearm case.

July 30, 1991 Hoslett files motion to suppress evidence and to dismiss for delay in firearm case.

### 2. *The Speedy Trial Act Exclusion for the Preparation of Pretrial Motions*

■ Since the time of oral argument in this case we have held that 18 U.S.C. § 3161(h)(1) permits the exclusion of the "time that the trial judge expressly designates for the preparation of motions" from Speedy Trial Act calculations. *United States v. Lewis,* 980 F.2d 555, 564 (9th Cir.1992). However, *Lewis* does not answer the question of what actions by a trial judge qualify as the "express designation" of time for the preparation of pretrial motions and what actions do not. At Hoslett's original arraignment on March 18, 1991, the district judge simply ordered that any pretrial motions be filed by April 29 and that any responses thereto be submitted by May 6. During Hoslett's June 17 arraignment on the firearm charges the court ordered all motions to be filed by July 29 and any opposition submitted by August 5. At oral argument, the government conceded that these dates were routine deadlines typically set in every case after arraignment. The issue presented here is whether a district court's standard practice of setting a date by which all pretrial motions must be filed amounts to an "express designation" of motion preparation time excludable from Speedy Trial Act calculations.

In construing the Speedy Trial Act "[o]ur task is to give effect to the will of Congress,

---

**5.** The period between his indictment in the firearm case on June 11 and his arraignment on those charges on June 17 is excludable. *See* 18 U.S.C. § 3161(h)(6) (where indictment is dismissed on government motion and later refiled, period between dismissal date and date when clock would have started for subsequent charge had there been no previous charge is excluded).

**6.** At the time of the proceedings in the district court we had not yet ruled on the availability of a pretrial motions preparation exclusion.

and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." *Negonsott v. Samuels*, — U.S. —, —— —, 113 S.Ct. 1119, 1122–23, 122 L.Ed.2d 457 (1993) (internal quotation omitted). Frequently, however, we must examine not only the statutory text at issue but also the statute's provisions as a whole, the history of the statute, and its purposes. *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1452 (9th Cir.1992). Here, the statutory language of section 3161(h)(1) sheds little light on the narrow question before us. The provision is one of nine mandatory exclusions from time computation under the Speedy Trial Act. It states that "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to" delay resulting from ten specific causes set forth in the provision, must be excluded. Delay for the purpose of preparing pretrial motions is not among the ten specified causes. In *Lewis*, we followed the lead of four other circuits and concluded that pretrial motion preparation time expressly designated by the court was among the unspecified causes comprehended by the "including but not limited to" proviso, and thus was a "proceeding concerning the defendant" for the purposes of section 3161(h)(1). However, *Lewis* does not consider whether a routine scheduling order triggers the pretrial motion preparation exclusion,[7] and the term "proceeding concerning the defendant" is of no assistance in answering that question.

Among the ten examples of "proceedings concerning the defendant" that are listed in section 3161(h)(1), subsection (F) is most relevant here. Under the original Speedy Trial Act of 1974, delay resulting from hearings on pretrial motions was excludable. Pub.L. No. 93–619, 88 Stat. 2076, 2078 (originally codified at 18 U.S.C. § 3161(h)(1)(E)). In 1979, Congress amended the Act and created an exclusion for "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion." § 3161(h)(1)(F); *see Henderson v. United States*, 476 U.S. 321, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986). While this subsection excludes all delay resulting from the filing of a motion and the hearing on a motion, *Henderson*, 476 U.S. at 329–30, 106 S.Ct. at 1876–77, a similar exclusion for delay caused by motion preparation time is conspicuously absent. Had Congress intended the general pretrial motion preparation exclusion advocated by the government—one that occurs every time a district court sets a deadline for the filing of pretrial motions—we think Congress would have included it expressly in the amendments relating to delays from pretrial motions.[8] *See United States v. Rojas–Contreras*, 474 U.S. 231, 239–40, 106 S.Ct. 555, 559–60, 88 L.Ed.2d 537 (1985) (Blackmun, J., concurring in the judgment) ("the Act's comprehensive list of exclusions counsels one to read Congress' failure to exclude certain periods of time as a considered judgment that those periods are to be included in the speedy-trial calculation.")

In this connection, we note that the 1979 amendments also added language to section 3161(h)(8)(B) that specifically allows the trial judge to grant a continuance creating excludable time where novel questions of fact or law make it unreasonable to expect pretrial preparation within the time limits set forth in the statute. 18 U.S.C. § 3161(h)(8)(B)(ii). Such continuances require express, on the record reasons for a finding that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). Such a continuance may not be granted for reasons related to the state of the court's calendar. 18 U.S.C.

---

**7.** In *Lewis* we excluded twenty-three days under the pretrial motion preparation exclusion. Nine of the days were specifically excluded because of the defendant's successful request for extra time to prepare pretrial motions. *Lewis* is silent as to the circumstances that led to the setting aside of the other fourteen days. *Lewis* does, however, cite the Seventh Circuit's opinion in *United States v. Tibboel*, 753 F.2d 608, 610 (7th Cir. 1985), in which the defendant made a specific request for pretrial motion preparation time, rather than the cases in which that circuit adopted the rule that a *sua sponte* scheduling order is sufficient (*see infra*).

**8.** Indeed, as discussed *infra*, there is evidence in the legislative history showing a deliberate decision not to include such an exclusion.

§ 3161(h)(8)(C). Thus, our analysis of the structure and history of the Speedy Trial Act strongly suggests that it does not contemplate the routine or automatic exclusion of all pretrial motion preparation time. .

We also believe that the extent to which pretrial motion preparation time may be excluded must be determined in light of the Speedy Trial Act's competing policies of a speedy trial and effective pretrial preparation. *See Rojas–Contreras,* 474 U.S. at 241, 106 S.Ct. at 560 (Blackmun, J., concurring in the judgment). An across-the-board exclusion for pretrial motion preparation that is based merely upon the entry of a standard scheduling order would sacrifice the first goal without necessarily furthering the second. Under such a rule defendants would be subject to an automatic extension of the seventy day statutory period in every case, whether or not they intended to file any motions or required any unusual amount of time for pretrial preparation.

█ Any uncertainty we might have in our construction of the Speedy Trial Act is resolved by turning to the Act's legislative history. Where a statute is uncertain, legislative statements, particularly committee reports, can help us to understand what Congress intended—to determine what the statute means. *Mt. Graham Red Squirrel,* 954 F.2d at 1453; *accord Toibb v. Radloff,* —— U.S. ——, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991) ("a court appropriately may refer to a statute's legislative history to resolve statutory ambiguity"). In reporting the 1979 amendments to the Speedy Trial Act, the Senate Judiciary Committee explained:

> Although some witnesses contended that all time consumed by motions practice, from preparation through their disposition, should be excluded, the Committee finds that approach unreasonable. This is primarily because, in routine cases, preparation time should not be excluded where the

questions of law are not novel and the issues of fact simple.

S.Rep. No. 96–212, 96th Cong., 1st Sess. 33–34, reprinted in Anthony Partridge, *Legislative History of Title I of The Speedy Trial Act of 1974* 114, 184 (Fed.Judicial Center 1980). The House Committee adopted the Senate proposal regarding the scope of the pretrial motions exclusion without change. H.R.Rep. No. 96–390, 96th Cong., 1st Sess. 10, reprinted in *id.* at 115.

The Report of the Senate Judiciary Committee is the only explicit Congressional discussion of a pretrial motions preparation exclusion and it provides us with substantial assistance in this case. The Report constitutes clear evidence of a deliberate decision not to allow for the routine exclusion of pretrial motion preparation time from Speedy Trial Act calculations. However, it also evidences a Congressional intent not to prohibit the exclusion of pretrial motion preparation time where the issues are novel or complicated.[9] Thus the legislative history of the Speedy Trial Act, like its structure, statutory history and purposes, supports the conclusion that routinely entered scheduling orders will not result in excludable pretrial motion preparation time.

In view of the clear statutory intent, we hold that a district court's standard practice of setting deadlines, *sua sponte,* for the filing of pretrial motions does not amount to "expressly designated" excludable pretrial motion preparation time under section 3161(h)(1). Our approach reconciles the language, structure, purposes, and statutory and legislative history of the Speedy Trial Act, all of which show an intent to insure the defendant and the public a speedy trial and to permit the exclusion of pretrial motion preparation only in certain *limited* circumstances.

We note that the Tenth Circuit has strongly suggested that a *sua sponte* court order does not result in excludable pretrial motion

---

9. The Committee suggested that any exclusions sought for this purpose should be granted with "caution" under the "ends of justice" continuance provision: § 3161(h)(8). *Legislative History* at 114, 184. None of the circuits to have considered the pretrial motion preparation exclusion has followed this suggestion. All have instead

relied on the "other proceedings" language of § 3161(h)(1). Nevertheless, the Committee's suggestion that an exclusion for pretrial motion preparation be subject to the formalities of the continuance process is further evidence that Congress did not intend a routinely entered motions order to create excludable time.

preparation time. *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 913–14 (10th Cir.1989) (per curiam) (creating "modest" speedy trial exclusion for grant of time for pretrial motion preparation by a court in response to a request by the defendant), *cert. denied*, 493 U.S. 1043, 110 S.Ct. 837, 107 L.Ed.2d 833 (1990). That court found that the policies behind the Speedy Trial Act were best implemented by removing the "burden of choice" as to whether to create excludable pretrial motion preparation time from the district court. *Id.* The Tenth Circuit also stated: "The defendant may either submit to the expeditious prosecution contemplated by the Act or elect to postpone his trial briefly to better formulate a defense; the choice remains entirely his." *Id.* We also note that the First and District of Columbia Circuits, both of which have recognized a pretrial motion preparation exception, have thus far applied that exception only to express requests by a defendant for time in which to file a pretrial motion, *United States v. Wilson*, 835 F.2d 1440, 1444–45 (D.C.Cir.1987); *United States v. Jodoin*, 672 F.2d 232, 238 (1st Cir. 1982), and that only the Seventh Circuit has allowed a court's *sua sponte*, routinely set pretrial motion deadlines to trigger the pretrial motion preparation exclusion. *See United States v. Barnes*, 909 F.2d 1059, 1064–65 (7th Cir.1990); *United States v. Montoya*, 827 F.2d 143, 153 (7th Cir.1987).

Our review of the relevant statutory and legislative materials persuades us that the Speedy Trial Act does not permit the exclusion of all pretrial motion preparation time as a routine matter. Only where there is a specific request for more pretrial motion preparation time than is routinely established by the district court in its standard scheduling order may such preparation time be excluded.[10] In the present case there was no such request. Therefore, the filing deadlines set by the district judge *sua sponte* at Hoslett's arraignments do not qualify as "express designations" of excludable pretrial

motion preparation time, and the periods of March 19–April 28 and June 18–July 28, 1991, are not on that basis excludable from Hoslett's seventy day speedy trial computation.

### 3. Did the Pendency of Motions in the Bank Robbery Case Affect the Speedy Trial Clock in the Firearm Case?

The government contends in the alternative that the motion to suppress that Hoslett filed on April 29, 1991 in case no. CR–91–143, the initial proceeding, tolled his seventy day clock in case no. CR–91–533, the firearm action, from the moment the indictment in the latter case was brought, even though Hoslett did not file a motion to suppress in that action until July 30, 1991. It is beyond dispute that all delay following the filing of a pretrial motion until its hearing is excludable. *See Henderson*, 476 U.S. at 327–30, 106 S.Ct. at 1875–77. The issue presented here is under what circumstances, if any, a motion filed in one case tolls the speedy trial clock in another, when the latter case involves charges dismissed from the original proceeding on the government's motion. The government cites *United States v. Gonzales*, 897 F.2d 1312, 1316 (5th Cir.1990), *cert. denied*, 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991), in support of its argument that tolling occurs. There, the Fifth Circuit held that a pretrial motion continues to toll the speedy trial period after the filing of a *superseding* indictment unless the superseding indictment moots the earlier motion. *Id.* The government asserts that the logic of *Gonzales* applies with equal force where certain counts in an indictment are dismissed in one case and later refiled in a new indictment with a different case number. Assuming without deciding that *Gonzales* accurately reflects the law in this circuit as to superseding indictments, we conclude that the rule set forth in that case does not apply in reindictment cases.[11]

---

10. We need not decide here whether a specific request by the government, as opposed to a request by the defendant, triggers excludable time under § 3161(h)(1), or whether such a request would fall under the provisions of § 3161(h)(8). We leave that determination for another day.

11. A superseding indictment is an indictment filed before the dismissal of the original or underlying indictment. *United States v. Rojas–Contreras*, 474 U.S. 231, 237, 106 S.Ct. 555, 558, 88 L.Ed.2d 537 (1985) (Blackmun, J., concurring in the judgment). In a reindictment case the

■ Certain rules are well established regarding the computation of excludable time where there is a new case and a new indictment. When some or all of the counts of an indictment are dismissed upon government motion and the government thereafter files a new indictment for the same conduct, the seventy day clock is deemed to run from the date it commenced with respect to the original indictment until the date of dismissal, subject to any statutory exclusions. *See United States v. Arkus*, 675 F.2d 245, 247 (9th Cir.1982), *overruled on other grounds*, *United States v. Rojas–Contreras*, 474 U.S. 231, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985). The speedy trial clock resumes running at the time the new indictment is filed or when the defendant makes a new appearance in connection with the charges contained in the new indictment. 18 U.S.C. § 3161(h)(6).[12] Put differently, the seventy day period commences with the starting date applicable to the original indictment and all periods of exclusion with respect to that indictment prior to dismissal of the charges remain excluded; also excluded is the period of time between the date the original charges are dismissed and the starting date applicable to the charges contained in the reindictment.[13]

The specific question here is as follows: If a motion is made in the first case prior to dismissal and is still undecided at the time of reindictment, does the pendency of the motion in the old case cause the resumption of tolling with respect to the charges refiled in the new case? Although *Gonzales* held that in superseding indictment cases the answer is "yes", there are crucial distinctions between a superseding indictment and a reindictment. Hoslett's separate indictment on the firearm charges constituted an entirely new case. The charges were adjudicated in a separate trial. Hoslett was subjected to a separate detention hearing in the new case. While a superseding indictment requires a rearraignment, it does not create a new case with its own, independent identity. The district court established new and different motion deadlines for the second case. Hoslett filed a separate motion to suppress in that case. The motions filed in case no. CR–91–143 do not appear on the docket sheets for case no. CR–91–533.

In sum, when a superseding indictment is filed there is only one criminal action; a reindictment results in two. The distinction makes all the difference here. Had Hoslett prevailed on his suppression motion in the bank robbery case, we doubt that the government would have accepted the proposition that his victory automatically resulted in the exclusion of the same evidence in the firearm case even in the absence of a motion to exclude.[14] For similar reasons, the pendency of the motion to suppress in the bank robbery case did not cause the resumption of tolling in the firearm case. Only the filing of a motion in the latter case—a motion to sever—had that effect.

■ We hold that where charges dismissed on the motion of the government are refiled in a new indictment in a new case, each case must be treated separately for Speedy Trial Act purposes commencing with the date of dismissal. There can be no further overlap after that time. Our conclusion is strengthened by our belief that extension of the *Gonzales* rule to new cases involving new indictments containing previously dismissed charges would likely cause substantial and unnecessary confusion. A rule that all motions filed in the original case are deemed filed in the second case for Speedy Trial Act

---

underlying indictment or charges are dismissed prior to the filing of the new indictment. *Id.* at 239, 106 S.Ct. at 559.

**12.** The reason for this rule is obvious. If the clock began anew, the government could circumvent the limitations of the Speedy Trial Act by repeatedly dismissing and refiling charges against a defendant. *Rojas–Contreras*, 474 U.S. at 239, 106 S.Ct. at 559 (Blackmun, J., concurring in the judgment).

**13.** For example, if one hundred calendar days had elapsed under the first indictment but sixty of them were excludable, the speedy trial clock pertaining to the new indictment would start at day forty-one.

**14.** We do not intend by the above to express any view as to the estoppel effect, if any, that a successful motion to suppress in one case would have with respect to a subsequent motion made in another case in which a similar or identical issue is raised. We address only the necessity of filing a formal motion.

purposes would make little sense. In a situation where misjoined indictment counts are dismissed but later refiled, a motion filed in the original case might relate only to the charges not dismissed and have no relevance whatsoever to the accusations in the subsequent criminal action. An alternative rule requiring the district judge to determine the applicability of motions filed in the original case to the new proceeding in order to determine whether they should count for speedy trial purposes would often prove unnecessary and cumbersome.

As we have explained, a motion filed in the original proceeding results in excludable time until the charges are dismissed regardless of the relationship between the motion and those charges. After the new case is brought, any pertinent motions will be filed in that action. Any relationship between the new case and any motion pending in the original proceeding has terminated. The bright line rule we adopt is easy to administer, faithful to the language of 18 U.S.C. § 3161(h)(1)(F), and consistent with general rules of motion practice.[15]

**4. Summary**

There was no excludable time attributable to motions preparation in either proceeding, notwithstanding the routine scheduling order issued by the district court. Nor, following the dismissal of the original charges, did any excludable time accrue with respect to the firearm case as a result of the pendency of the motion to suppress in the original action. Accordingly, forty-two nonexcludable days elapsed between Hoslett's original arraignment in case no. CR–91–143 on March 18, 1991 and the motion to suppress evidence he filed in that case on April 29, 1991. Similarly, forty-two nonexcludable days passed between Hoslett's arraignment in the firearm case on June 17, 1991, and the date on which he filed a motion to sever in that case: July 29. In sum, eighty-four nonexcludable days elapsed between Hoslett's initial appearance on the firearm charges and his trial for those

offenses. This delay exceeds the seventy day limitation imposed by the Speedy Trial Act and constitutes a violation of that statute. The district court erred in denying Hoslett's motion to dismiss the indictment in the firearm case.

**II. Other Claims**

**A. Due Process Violation from Pre–Indictment Delay**

■■■■ Hoslett argues that the pre-indictment delay violated his Fifth Amendment due process rights because the district court was unable to impose a sentence on the bank robbery and firearm charges that would run concurrently with the sentence he was serving for the parole violations. To establish a due process violation from pre-indictment delay, a defendant must first prove that he suffered actual prejudice from any delay. If actual prejudice is shown then the court weighs the length of the pre-indictment delay against the reasons for the delay. *United States v. Gonzalez–Sandoval,* 894 F.2d 1043, 1050 (9th Cir.1990). In *Gonzalez–Sandoval* the defendant claimed his due process rights had been violated because pre-indictment delay prevented him from being sentenced on federal charges concurrently with his state term of incarceration. We held that such a claim was too speculative. *Id.* at 1051. Hoslett makes an almost identical argument. The reasoning of *Gonzalez–Sandoval* controls. Therefore, the pre-indictment delay did not violate Hoslett's due process rights.

**B. Improper Sentence Enhancement**

■■■ The district court enhanced Hoslett's offense level by two in accordance with U.S.S.G. § 2B3.1(b)(2)(F) (Nov. 1, 1991) because it found he had made an express threat of death when he said: "This is a robbery. Give me the money or I will shoot." In *United States v. Eaton* we held that the following words constituted an express death threat: "Give Me All Your Money or I'll

**15.** The issue before us is analogous to one involving a codefendant whose case is severed and given a separate trial. During the period the codefendants are joined, an exclusion for one codefendant tolls the speedy trial clocks for all.

*United States v. Butz,* 982 F.2d 1378, 1381 (9th Cir.1993). However, exclusions in the original case after severance do not apply to a severed defendant. *See* 18 U.S.C. § 3161(h)(7).

Shoot." 934 F.2d 1077, 1079 (9th Cir.1991). Hoslett attempts to distinguish *Eaton* because the defendant in that case had a simulated gun whereas he did not brandish a weapon. However, our holding in *Eaton* was not based upon the defendant's use of a fake gun but on the fact that the words used constituted an express threat of death. In addition, application note 7 to U.S.S.G. 2B3.1(b)(2)(F) (Nov. 1, 1991) provides several examples of the type of threat which should be considered an express threat of death. One such example is: "Give me the money or I will shoot you." Hoslett's words would create the same amount of fear as those in the example. Therefore, the district court did not err in imposing the sentencing enhancement.

### C. Ineffective Assistance of Counsel

 The customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack under 28 U.S.C. § 2255. *United States v. Sanclemente–Bejarano,* 861 F.2d 206, 211 (9th Cir.1988) (per curiam); *United States v. Birges,* 723 F.2d 666, 670 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984). While we may consider such claims on direct appeal if the record is sufficiently complete to allow review, *United States v. Swanson,* 943 F.2d 1070, 1072 (9th Cir.1991), we find that in this case it would be more appropriate for Hoslett to assert his ineffective assistance of counsel claim on collateral attack, after creating whatever record might be relevant in the district court. Therefore, we do not reach this issue.

### III. Conclusion

 We affirm Hoslett's bank robbery convictions in case no. CR–91–143. Because we find that a speedy trial violation occurred with respect to Hoslett's firearm conviction,

we reverse and remand in case no. CR–91–533 for dismissal of the indictment. *United States v. Jordan,* 915 F.2d 563, 566 (9th Cir.1990); *United States v. Perez–Reveles,* 715 F.2d 1348, 1353 (9th Cir.1983). On remand, the district court should determine, taking into account the factors specified in 18 U.S.C. § 3162(a)(2), whether the dismissal is to be with or without prejudice. If the district court determines it is to be without prejudice, retrial may be had only upon the obtaining and filing of a new indictment.[16] *Perez–Reveles,* 715 F.2d at 1353. A determination of dismissal without prejudice does not permit reinstatement of the conviction and sentence. *Id.*

## AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

KOZINSKI, Circuit Judge, dissenting in part:

The majority proceeds as if *United States v. Lewis,* 980 F.2d 555 (9th Cir.1992), left open the question we address today. It did not. *Lewis* held that "time that the trial judge *expressly designates* for the preparation of motions" is excludable under the Speedy Trial Act. *Id.* at 564 (emphasis added). *Lewis* is not limited to situations when the judge's designation order comes in response to a request by one of the parties; nothing in the language or reasoning of the opinion supports any such distinction. To be sure, *Lewis* didn't expressly rule out such a distinction, just as it didn't expressly rule out a distinction based on the fact that the defendant's surname there began with an "L." But if *Lewis* is distinguishable here, then there's no case we can't distinguish if we set our minds to it.[†]

The majority purports to find an opening in *Lewis* by observing that the case "does not answer the question of what actions by a trial

---

16. Because at this point retrial on the firearm violation is purely speculative, we do not reach the merits of Hoslett's Fourth Amendment claims.

† I'm mystified by the majority's dictum that *Lewis* also might not apply to motions made by the government. *See* maj. op. at 657 n. 10. Not only is this inconsistent with *Lewis,* it introduces an unjustified asymmetry in the operation of the

Speedy Trial Act. The Act, unlike the Sixth Amendment right to a speedy trial, is not purely a means for protecting defendants; it is intended to move the criminal justice system along for the benefit of everyone involved—including the public. *See, e.g., United States v. Antonio,* 705 F.2d 1483, 1485 (9th Cir.1983). The majority's suggestion gives defendants precisely the type of unilateral opportunity to drag out the process that Congress passed the Act to curb.

judge qualify as the 'express designation' of time for the preparation of pretrial motions and what actions do not." Maj. op. at 654–55. But *Lewis* holds quite clearly that an *order* by the court is an express designation; *Lewis* doesn't answer the question the majority poses only if you don't read it.

In any event, what's so complicated about figuring out the meaning of "express designation"? The phrase is hardly glossolalia; it's made up of two simple English words— "express" and "designation." Express means "clearly indicated; explicit," Random House Dictionary 467 (rev. ed. 1975); "designation" is "the act of designating," *id.* at 360, which in turn is defined as "to mark or point out; specify," *id.* There is no mystery here, no ambiguity, no occasion for clever interpretation, no need to consider policy, no excuse for plumbing the depths of legislative history, nothing at all that would justify this outburst of judicial creativity. An order by a district court giving the parties time to prepare pretrial motions is quite clearly an "express designation" of time for that purpose. How, indeed, would a court go about making an "express designation" except by cutting an order? The majority has manufactured an ambiguity in a simple English phrase to free itself from the plain teaching of *Lewis.*

The majority creates a conflict not only with our own recent precedent but with the only other circuit to rule on the issue. *See United States v. Barnes,* 909 F.2d 1059 (7th Cir.1990); *United States v. Montoya,* 827 F.2d 143 (7th Cir.1987). Despite the artful phrasing in the majority opinion, no circuit has come close to accepting the position we adopt today; we're on our own. I can see absolutely no justification for this wholesale disregard of precedent. I dissent.