**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Howard Stanton LEWIS, Defendant–Appellant.**

**No. 91–10280.**

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 16, 1992 *.

Decided Nov. 23, 1992.

---

* This panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App. 34(a).

Allen B. Bickart, Phoenix, Ariz., for defendant/appellant.

Mark E. Aspey, Asst. U.S. Atty., D. Ariz., Phoenix, Ariz., for plaintiff/appellee.

Before CHOY, ALARCON, and HALL, Circuit Judges.

CHOY, Circuit Judge:

Howard Stanton Lewis appeals from his judgment of conviction under 18 U.S.C. § 2314 alleging that it should be reversed because of various violations of his rights under the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161–3174 (1985 & Supp.1992). Finding these contentions without merit, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 20, 1990, a one-count complaint and arrest warrant were issued by the District Court for the District of Arizona charging Lewis with Interstate Transportation of Money Obtained by Fraud in violation of 18 U.S.C. § 2314. On that date Lewis was in custody in San Jose, California on unrelated charges.

On July 24, 1990, while incarcerated in San Jose, Lewis was served with a grand jury subpoena from the District of Arizona requiring him to produce true and natural handwriting exemplars.[1] Lewis's attorney at that time contacted counsel for the government and suggested that the government use handwriting exemplars already provided by Lewis to United States Postal Inspectors in the California case ("Postal exemplars"). The government acquiesced in using the Postal exemplars in lieu of enforcing the subpoena and Lewis's attorney agreed to provide further exemplars should they prove unsatisfactory.

On September 26, 1990 the California charges were dropped and on September 27th, pursuant to the outstanding Arizona warrant, Lewis was arrested and transported to Arizona. Lewis first appeared before an Arizona magistrate judge on October 19, 1990. At this time a public defender was assigned to represent him, his detention and preliminary hearings were scheduled for October 26th and he was ordered temporarily detained as a flight risk.

At the October 26th hearing Lewis waived his right to a preliminary hearing and the court ordered his detention continued. According to the government, Lewis also waived his right to a speedy indictment when, in order to facilitate already proceeding plea negotiations, he requested that the government delay presenting the matter to the grand jury and stipulated to a two-week extension of the 30–day speedy indictment deadline under 18 U.S.C. § 3161(b).

On November 9th, as a result of ongoing plea negotiations, the government extended Lewis a plea offer. On November 14th Lewis was indicted [2] and was arraigned on November 21st, at which time the court set trial for January 15, 1991 and a pretrial motions deadline for December 6th. Thereafter, plea negotiations continued. On December 11th, Lewis moved the court for a two-week extension of the pretrial motions deadline citing "extensive plea negotiations" and the need for "additional investigation" as reasons why the delay was needed. The court granted the motion on December 12th, giving Lewis until December 20th to prepare and file pretrial motions.

Lewis rejected the government's plea offer sometime prior to December 21st, although neither party is certain of the exact date. On December 21st, when the government notified Lewis it formally was withdrawing the plea offer and that it might move for a trial continuance, Lewis indicated that he would oppose such a request. Upon Lewis's rejection of its plea offer, the government requested the FBI to "expeditiously complete its analysis" of the Postal exemplars.[3] On January 7, 1991 the gov-

---

1. This was the second grand jury subpoena requesting such exemplars. A prior subpoena was served on Lewis on June 28, 1988 in Tampa, Florida and he refused to provide the exemplars absent a court order.

2. Lewis was indicted on five counts of Mail Fraud, under 18 U.S.C. § 1341, two counts of Wire Fraud, under 18 U.S.C. § 1343, and one count of Interstate Transportation of Money Ob-

tained by Fraud, under 18 U.S.C. § 2314. On February 19, 1991 the district court dismissed one of the mail fraud counts and the trial proceeded on the remaining seven counts.

3. According to the government, it did not initially ask the FBI laboratory to do a final comparison between the Postal exemplars and the evidence in this case because it believed the case would result in a pretrial guilty plea. The gov-

ernment first learned that the Postal exemplars could not be used because of their "distortion."

On January 2, 1991 Lewis moved to reset the trial date. A hearing on the motion was scheduled for January 7th. At the January 7th hearing Lewis withdrew his motion to reset the trial date. Also at that hearing, the government informed the court that it would have problems using the Postal exemplars and that it might move for a trial continuance. The court then ordered Lewis to provide new exemplars.

While he was being escorted to a holding cell after the January 7th hearing, Lewis tripped on some stairs and fell. At the time of the fall Lewis's hands were cuffed behind his back and he complained of pain in his right rib and shoulder area and upper nose. Although at the time a guard offered him medical attention, Lewis declined and indicated that he would wait to see a doctor when he returned to the jail. Lewis, however, never did seek medical treatment.

Later that same afternoon, an FBI agent went to Lewis's holding cell to obtain the court-ordered exemplars (the "January 7th exemplars"). Upon learning of Lewis's fall and alleged injuries, the agent asked Lewis if they would affect his ability to give the handwriting exemplars. Lewis responded that he was not sure and provided the exemplars.

On January 8th the government sent the January 7th exemplars to the FBI lab in Washington, D.C. where they arrived late in the afternoon of January 9th. After an initial review, the examiner concluded that they appeared "stilted and not free flowing and probably not in the defendant's normal, natural handwriting," and that true and natural exemplars needed to be obtained to assure their authenticity and eliminate attempts to disguise.

On January 9th the government moved for a trial continuance and on January 10th a telephonic hearing was held on that motion. The magistrate judge granted the motion and continued the trial until February 19, 1991—excluding 41 days from the 70–day calculation under § 3161(c)(1).[4] In its written order the court concluded that under §§ 3161(h)(1)(F) and (8)(A), the "ends of justice" were served best by granting the continuance and outweighed the interests of the public and defendant in a speedy trial. The court also found that, due to Lewis's actions, failure to grant the continuance would make continuation of the proceeding impossible and result in a miscarriage of justice and would deny the government reasonable time to prepare effectively for trial "taking into account the government's exercise of due diligence and proceeding in good faith."

On February 22, 1991 the jury found Lewis guilty on all counts. He was sentenced to a term of twenty years imprisonment and ordered to pay $25,000 restitution.

## II. STANDARDS OF REVIEW

██ We review factual findings regarding the STA for clear error and questions of law concerning the application of the Act *de novo*. *United States v. Karsseboom*, 881 F.2d 604, 606 (9th Cir.1989); *United States v. Berberian*, 851 F.2d 236, 239 (9th Cir.1988), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989); *see also United States v. Taylor*, 487 U.S. 326, 335–37, 108 S.Ct. 2413, 2418–20, 101 L.Ed.2d 297 (1988). We will reverse a district court's finding of an "ends of justice" exception only if there is clear error. *United States v. Murray*, 771 F.2d 1324, 1327 (9th Cir.1985).

ernment states, however, that it did have the FBI lab conduct certain examinations of the Postal exemplars with some preliminary results. Lewis disputes this claim.

**4.** 18 U.S.C. § 3161(c)(1) (1985) provides in part: In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

## III. ANALYSIS

### 1. Speedy Indictment—Waiver

Under 18 U.S.C. § 3161(b)[5] a defendant must be indicted within 30 days of his arrest unless that time is extended for one of eight reasons set out in § 3161(h). If the indictment is not timely filed the defendant is entitled to have the charges dismissed. 18 U.S.C. § 3162(a)(1). Lewis argues that the indictment in this case was not timely filed.

■ Although Lewis admits that he did not specifically contest the timeliness of the indictment in the district court, he nonetheless contends we should review his objections on appeal given our holding in *United States v. Pollock*, 726 F.2d 1456 (9th Cir.1984). He argues that, under *Pollock*, his objections in the district court to violation of his speedy *trial* right suffice as proper objections regarding claimed violations of his right to a speedy indictment, and that he therefore is not barred from raising the issue on appeal by our general rule against reviewing questions not first raised in the district court.

Lewis, however, misinterprets our holding in *Pollock* and his reliance on that decision is inapposite.

In *Pollock* we held that, despite the district court's and the parties' failure to raise the issue below, because of the specific circumstances of the case we could recognize *sua sponte* that the defendant was not indicted within the prescribed time frame. *Id.* at 1464. We focused on two facts in reaching this conclusion: the defect in timing appeared on the face of Pollock's indictment;[6] and, he had objected to the indictment on STA grounds in the district court.[7] Thus, we concluded that "where the defendant makes a *Speedy Trial Act objection* and the indictment does not on its face comply with that Act, this court may consider such a defect if it was not specifically raised below." *Id.* (emphasis added).

Lewis interprets the phrase "Speedy Trial Act objection" in this conclusion as meaning that if a defendant makes *any* STA objection in the district court (including an objection to the timeliness of his *trial*) the objection suffices as raising the speedy indictment question for the purpose of preserving the issue for appellate review. This reading of *Pollock*, however, is too literal and ignores other discussion of the issue as well as the facts of the case.

In *Pollock* the defendant's objection to the district court's exclusion of time from the 30-day indictment calculation was adequate to alert the district or appellate court to examine whether or not the indictment was timely. *Id.* at 1464. Lewis, however, made no objections regarding the indictment in this case; his only STA objections related to the timeliness of the *trial*. Where the only STA objections raised in the district court relate to the timeliness of the *trial*, it is unreasonable to expect that a district or appellate court would in any way be on notice to examine whether the *indictment* in that case was timely filed.

Furthermore, *Pollock* did not even involve any objections under the speedy trial provisions of the Act—either in the district court or on appeal. *Id.* at 1458 n. 1. Therefore, in referencing "Speedy Trial Act objections" in our holding, it is only logical to conclude that we did not intend to in-

---

**5.** Section 3161(b) provides in pertinent part that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b).

**6.** Pollock was arrested on February 20, 1981 and the indictment in *Pollock* was filed on June 16, 1981—clearly more that 30 days thereafter. *Id.* at 1458. (*Pollock* cites the date of indictment as June 16, *1982*, but this is apparently a typographical error.) Lewis's indictment, on its face, also does not appear to comply with the 30-day stricture. He was arrested on September 27, 1990 and the indictment was issued on November 14th.

**7.** Although Pollock's specific objection in the district court related to the magistrate judge's order excluding time and did not specifically challenge the timeliness of the indictment, we noted that "such an objection is sufficient to alert both the court below and this court to the need to examine the record to see if the defendant was indicted within the requisite number of days." *Id.* at 1464.

clude within our meaning objections not even at issue in the case before us.

■ Finally, *Pollock*'s interpretation of § 3162(a)(1) also precludes Lewis from raising this issue on appeal. A defendant seeking to dismiss a case for a claimed violation of the STA's speedy indictment provisions must move for dismissal *prior to trial* (although not necessarily before indictment) or he waives his right to dismissal under § 3162(a)(1). *Id.* at 1464; *cf. Berberian,* 851 F.2d at 239–40 (under § 3162(a)(2) defendant must move to dismiss before trial or waive right to dismiss for speedy trial violation); *United States v. Brown,* 761 F.2d 1272, 1276–77 (9th Cir. 1985) (same). Lewis failed to move *prior to commencement of trial* for dismissal on the ground that his speedy indictment right was violated and he, therefore, has waived his right to do so here.

### 2. Speedy Trial

The STA mandates that a defendant be tried within 70 days of the filing of an indictment or information or the first appearance before a judge or magistrate. 18 U.S.C. § 3161(c)(1). Lewis was indicted on November 14, 1990 and his trial did not begin until February 19, 1991—well over 70 days later.

Under § 3161(h)(8)(A), however, the district court may exclude from the 70–day calculation any delay resulting from a continuance granted by the judge upon the motion of either party or on his or her own motion "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action

outweigh the best interest of the public and the defendant in a speedy trial." *Id.*

### (a) Adequacy of District Court Findings

Lewis argues that the district court's findings regarding the "ends of justice" continuance were inadequate and lacked the requisite specificity.

■ Congress did not intend the "ends of justice" exclusion to be granted as a matter of course but rather to be used sparingly and only when necessary. *United States v. Jordan,* 915 F.2d 563, 565 (9th Cir.1990); *United States v. Martin,* 742 F.2d 512, 514 (9th Cir.1984). Congress, therefore, explicitly limited courts' discretion to grant these continuances in two ways. First, the Act lists four factors that a district court must consider prior to granting a continuance.[8] Lewis does not argue that the court failed to consider these factors.

Second, the court is required to set forth "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A); *United States v. Frey,* 735 F.2d 350, 352 (9th Cir.1984). In this regard, the district court must make its findings reasonably explicit and set forth those findings with particularity. *United States v. Perez–Reveles,* 715 F.2d 1348, 1352 (9th Cir.1983); *Frey,* 735 F.2d at 352 (citing H.R.Rep. No. 1508, 93rd Cong., 2d Sess. 33, *reprinted in* 1974 U.S.C.C.A.N. 7401, 7426).

■ Lewis argues that the district court did not comply with these requirements

---

**8.** That section states:

The factors, among others, which a judge shall consider in determining whether to grant a continuance ... are as follows:
   (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
   (ii) Whether the case is so unusual or so complex, ... that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

.     .     .     .

   (iv) Whether the failure to grant such a continuance in a case which, taken as a

whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.
18 U.S.C. § 3161(h)(8)(B)(i)–(iv).

because its only explanation of the reasons for granting the continuance was "defendant's actions."

Lewis, however, cites only those district court findings contained in its written order, and neglects to include the more extensive oral findings made by the court during the January 10th telephonic hearing. Although the court's written order cites "defendant's actions" as the reason for the continuance, its oral ruling sets out the court's reasoning in more detail.[9]

This ruling clearly meets the Act's specificity requirement and stands in stark contrast to the cases cited by Lewis in which the court either made no "ends of justice" findings or made findings but not contemporaneously with its grant of the continuance. *See, e.g., Jordan*, 915 F.2d at 565–66 (no findings); *Perez–Reveles*, 715 F.2d at 1351–53 (same); *Frey*, 735 F.2d at 352 (district court may not consider "ends of justice" factors under § 3161(h)(8)(A) for first time after continuance granted).

### (b) Propriety of "Ends of Justice" Continuance

■ Lewis also contends that the court clearly erred in granting the "ends of justice" continuance, arguing first that the government did not exercise diligence in prosecuting his case.

He argues that the government had access to the Postal exemplars since July 1990 and could have conducted a detailed analysis at an earlier date, and, therefore, it was the government's inaction and failure to prepare diligently for trial that necessitated the continuance. The government responds that Lewis's own actions and its efforts to foster settlement, not its lack of diligence, are what precipitated the need for the "ends of justice" continuance in this case.

The government was unprepared to go to trial as scheduled because it did not have adequate handwriting exemplars necessary to go forward with the prosecution. Because the delay in obtaining proper exemplars was occasioned by the government's justifiable reliance on Lewis's good faith in plea bargaining, by Lewis's failure to produce adequate January 7th exemplars, and by factors beyond its control, the district court did not clearly err in concluding that the government acted diligently.

Contrary to Lewis's contention, the government could not have sent the Postal exemplars for examination any time after July 1990. Between July 24, 1990, when it agreed to use the Postal exemplars, and September 26, 1990, when the California charges against Lewis were dismissed, the government could not even have obtained the Postal exemplars because they still were being used in the California prosecution.

Moreover, because Lewis and the government actively were engaged in settlement

---

**9.** The court orally ruled that:

... it does appear that in view of the ongoing plea negotiations and the actions of the defendant in submitting exemplars which do appear to the experts to be stilted or unnatural, the combination of these factors would suggest to the Court that these are delays occasioned by the defendant and should be excludable under 3161.

As for the trip and fall incident, I see no significance to that as being an act on the part of the defendant to delay the trial. I think it's only significant to the extent that it may or may not have affected his ability to provide true, natural flowing hand-writing exemplars.

It appearing to the expert that the exemplars are not accurate and true and free flowing, the defendant cannot avail himself of the speedy trial rule when he is held to an obligation under the law to provide handwriting exemplars. That would apply not only to this continuance, but he should be aware that it

could apply to any future exemplar provided for by him which is not in his normal, natural handwriting.

....

I think the precise bases [for finding the delay excludable] are the fact that the defendant had entered into plea negotiations with the Government, and having done so it was in the interest of justice to pursue those to their fullest extent, and then having him withdraw from them, the Government was then placed in the position of having to immediately prepare for this trial without the benefit of the exemplars. And in an effort to obtain even an analysis of those exemplars within the remaining period of time, which may have been possible had the defendant provided trustworthy, normal, natural handwriting exemplars, we could have gone to trial on the scheduled date. He did not.

Reporter's Transcript, Jan. 10, 1991 Hearing at 8:15–10:20.

discussions beginning sometime between October 19th and October 26th [10] and ending on December 21st when the government withdrew its formal plea offer, the government's failure to have the FBI undertake a detailed analysis of the Postal exemplars during that period cannot be attributed to lack of diligence on its behalf. This is particularly true in light of Lewis's October 26th request for a two-week extension of the speedy indictment deadline in order to facilitate plea negotiations and his December 10th motion to extend the deadline for filing pretrial motions, which he based at least in part on the fact that the parties were engaged in "extensive plea negotiations." The government's good faith belief that Lewis had a strong interest in settling and that the case likely would settle before trial, and its resulting decision to delay final review of the Postal exemplars, thus was justified and prudent, rather than reflective of a lack of diligence.

Finally, the government's actions after plea negotiations terminated also reflect diligence on its behalf. Immediately upon Lewis's rejection and the government's withdrawal of the plea offer, the government had the Postal exemplars analyzed.[11] Although, because of intervening holidays, the government did not learn that the Postal exemplars were distorted until January 7th—a delay over which it had no control—upon discovering that they were "distorted," the government acted diligently in notifying the court, obtaining the court ordered January 7th exemplars that same day, and immediately forwarding them to the FBI lab for analysis.[12]

Nor did the district court clearly err in considering Lewis's actions when deciding that the "ends of justice" continuance was warranted under § 3161(h)(8)(B)(i) & (iv).

█ Where a defendant's own actions contribute to the need for an "ends of justice" continuance under the STA the defendant cannot complain that a continuance violates his or her speedy trial rights. See United States v. Mentz, 840 F.2d 315, 331 (6th Cir.1988) (where defendant's vacillation in changing to a guilty plea lulled the government into suspending its trial preparation, delay attributed to him not government); United States v. Bolton, 905 F.2d 319, 322 (10th Cir.1990), cert. denied, —— U.S. ——, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991) (need for continuance due to defendant's last minute vacillations regarding representation and waiver of STA rights attributed to him not government); United States v. Studnicka, 777 F.2d 652, 657–58 (11th Cir.1985) (continuance granted defendant to obtain counsel attributed to him because defendant cannot "string the court

10. Neither party indicates exactly when settlement discussions began. However, Lewis was arrested on September 27th and initially appeared before a magistrate judge and was appointed counsel on October 19th. On October 26th, in an effort to facilitate plea negotiations, Lewis requested the government to delay presentation to the grand jury and stipulated to a two week extension of the speedy indictment deadline. Thus, it seems logical to conclude that settlement talks began after Lewis had counsel (on October 19th) but before the October 26th reference to already proceeding plea negotiations.

11. Lewis contends that testimony of the FBI handwriting expert at trial indicates that she did not review any of Lewis's handwriting exemplars until January 23, 1991. A review of the trial transcript indicates that the agent did not compare all three exemplars until that date but does not state that no one examined the Postal or January 7th exemplars individually prior to that date in order to assess whether they were adequate.

12. Notably, the government's preparation for this case actually commenced in June 1988—when it issued the first subpoena for exemplars. The government failed to obtain these exemplars because of Lewis's refusal to comply with that subpoena absent a court order. Moreover, the government continued to seek exemplars from Lewis through a second subpoena served on Lewis in July 1990. Only after the government agreed, at Lewis's request, to use the Postal exemplars did it agree not to seek enforcement of the two subpoenas. These early efforts cannot reasonably be characterized as lacking diligence.

Moreover, the facts of United States v. Didier, 542 F.2d 1182, 1187 (2d Cir.1976), which Lewis cites as support for his argument, stand in stark contrast to those in this case. In Didier the government's delay in preparing for trial was a blatant maneuver to bolster its case against the defendant and a calculated step to gain tactical advantage. In contrast, the delay here was at least in part occasioned by Lewis's own actions as well as by the government's good faith belief that the case would settle.

along by delaying in retaining counsel and then use the [STA] as a sword to dismiss a proper indictment, rather than as a shield to protect against unnecessary and unfair delays."); *cf. Hudson v. Moran,* 760 F.2d 1027, 1030 (9th Cir.), *cert. denied,* 474 U.S. 981, 106 S.Ct. 387, 88 L.Ed.2d 339 (1985) (under Nevada state law equivalent of STA, when defendant's dilatory tactics prevent trial from commencing within the statutory period state will not be charged with responsibility for the delay).

Although Lewis's actions alone did not trigger the need for the "ends of justice" continuance, his whole-hearted and seeming good faith participation in plea negotiations,[13] as well as his provision of the stilted and unnatural January 7th exemplars,[14] clearly played a major role in prompting the need for a continuance. Thus, the district court did not clearly err in concluding that the ends of justice would be served by granting a continuance to permit the government adequate time to obtain satisfactory exemplars and to prepare for a trial that otherwise would not be able to proceed without the exemplars.[15]

**13.** Lewis cites *United States v. Perez–Reveles,* 715 F.2d 1348 (9th Cir.1983), as support for his argument that the district court improperly considered his participation in plea bargain negotiations and rejection of the government's offer when granting this continuance. In *Perez–Reveles* the district court excluded time during which the defendant and government were engaged in plea negotiations under the § 3161(h)(8)(A) "ends of justice" provision. We held that, because the district court's ruling did not include the explicit "ends of justice" findings required by the Act, the time period was not excludable. *Id.* at 1353. The district court's "ends of justice" findings consisted only of conclusory oral statements citing the complexity of the case and the pending settlement negotiations as reasons for the exclusion. *Id.* at 1352.

In so holding we noted that, "[n]egotiation of a plea bargain is not one of the factors supporting exclusion provided in section 3161(h)(8)(B)." *Id.* Lewis relies on this statement for his argument that the district court improperly considered plea negotiations in this case. Lewis, however, fails to recognize that the district court here cited his participation in plea negotiations for an entirely different purpose from that in *Perez–Reveles.* In *Perez–Reveles* the district court sought to exclude the time during

## (c) Speedy Trial Act Calculation—Automatic Exclusions

Because we uphold the district court's grant of the "ends of justice" continuance, we need not reach the question of automatic exclusions. The speedy trial period in this case began running on November 14, 1990, the day Lewis was indicted. *United States v. Haiges,* 688 F.2d 1273, 1274 (9th Cir.1982). The "ends of justice" continuance excluded forty-one days from the speedy trial calculation—from January 11, 1991, the day after the district court granted the government's motion for a continuance, through February 18, 1991, the day before the trial commenced on February 19, 1991. That left a total of 58 days—17 days in November, 31 days in December, and 10 days in January—not including the 41–day continuance, before Lewis's trial commenced on February 19, 1991. Thus, even without accounting for days automatically excluded under 18 U.S.C. § 3161(h)(1)–(6), Lewis's trial commenced within the mandated 70–day period.

## 3. Continuous Detention

■ Finally, Lewis contends that he was continuously detained in custody in viola-

which the parties were negotiating a plea, and we quite properly observed that none of the § 3161(h)(8)(B) subsections include plea negotiations as a factor. The district court here, however, did not purport to exclude the time during which Lewis and the government were negotiating. Rather, the district court cited Lewis's participation in intensive plea negotiations and withdrawal from those negotiations at a time close to trial to demonstrate how his actions led the government attorneys to believe that the case would not go to trial which in turn prompted them to delay ordering the final FBI review of the Postal exemplars.

**14.** Notably, provision of these inadequate exemplars contributed to the delay regardless of whether Lewis intentionally distorted the exemplars or their stilted nature resulted because of an injury Lewis sustained during his fall.

**15.** We decline to reach Lewis's final argument that the district court's grant of the "ends of justice" continuance violated his constitutional right to due process. Because he failed to raise this argument before the district court, he is precluded from doing so for the first time on appeal. *See, e.g., United States v. Carlson,* 900 F.2d 1346, 1349 (9th Cir.1990).

tion of 18 U.S.C. § 3164. Section 3164 provides that the trial of a detained person "who is being held in detention solely because he is awaiting trial ... shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government." 18 U.S.C. § 3164(a)(1) & (b).

Lewis was detained as a flight risk on October 26, 1990 and thus, the 90–day detention period began to run on October 27th. In calculating the 90 days, delays under § 3161(h) are excluded. *Id.* § 3164(b). Thus, the 41 days properly excluded under the "ends of justice" continuance are also excluded from the calculation here. Moreover, two days are excluded as delay resulting from Lewis's December 11th motion for an extension of the pretrial motions deadline, decided by the court on December 12th. *See* § 3161(h)(1)(F) (excluding delay resulting from any pretrial motion, calculated from the filing of the motion through its disposition).

■ Finally, although to date this court has not specifically addressed the issue, three circuits have held that § 3161(h)(1) excludes from STA calculations time that the trial judge expressly designates for the preparation of motions, even though the provision does not expressly cover such preparation time. *United States v. Wilson*, 835 F.2d 1440, 1444–45 (D.C.Cir.1987); *United States v. Tibboel*, 753 F.2d 608, 610 (7th Cir.1985); *United States v. Jodoin*, 672 F.2d 232, 237–38 (1st Cir.1982). By its terms, § 3161(h)(1) excludes "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to," those enumerated in subsections (A)–(J).

Those courts reasoned that the phrase "including but not limited to" in § 3161(h)(1) indicates that the particular time periods listed in subsections A through J are an illustrative rather than an

exhaustive enumeration of those delays resulting from "other proceedings concerning the defendant." *Wilson*, 835 F.2d at 1444; *Tibboel*, 753 F.2d at 610; *Jodoin*, 672 F.2d at 238 ("the list [of proceedings concerning the appellant] is not intended to be exhaustive. It is representative of procedures of which a defendant might legitimately seek to take advantage for the purpose of pursuing his defense.") (quoting S.Rep. No. 212, 96th Cong., 1st Sess. 10 (1979)).

We find these decisions persuasive and thus exclude from the 90–day continuous custody calculation the 23 days set aside by the district court in this case for preparation of pretrial motions.

Because we uphold the exclusion of the 41 days for the "ends of justice" continuance, the two days for the court's handling of pretrial motions, and the 23 days for preparation of pretrial motions, Lewis was timely tried under this section since only 41 nonexcludable days elapsed between his detention and commencement of trial.

AFFIRMED.