FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 23 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50006 |
| Plaintiff-Appellee, | D.C. Nos. |
| v. | 2:19-cr-00490-CAS-1 2:19-cr-00490-CAS |
| PAUL FRANCISCO TORRES III, | |
| Defendant-Appellant. | OPINION |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted March 18, 2021
San Francisco, California

Before: Mary H. Murguia and Morgan Christen, Circuit Judges, and Barbara M. G. Lynn,[*] District Judge.

Opinion by Judge Murguia

MURGUIA, Circuit Judge:

This case raises traditional questions of statutory interpretation and due process that have been complicated by the COVID-19 pandemic. We are asked to

_____

[*] The Honorable Barbara M. G. Lynn, Chief United States District Judge for the Northern District of Texas, sitting by designation.

determine the limits that federal law and the Constitution place on holding an accused person in detention solely for the purpose of awaiting trial.

The questions presented in this action begin with the Sixth Amendment's guarantee of a "speedy and public trial." U.S. Const. amend. VI. To effectuate the Sixth Amendment right to a speedy trial, Congress enacted the Speedy Trial Act of 1974 ("Speedy Trial Act" or the "Act"). Pub. L. No. 93-619, 88 Stat. 2076 (1975). The Speedy Trial Act sets three time limits to ensure timely prosecution of a criminal action: (1) § 3161(b), which requires a defendant be charged with a crime within thirty days of his arrest; (2) § 3161(c), which requires a defendant be tried within seventy days of being charged with a crime; and (3) § 3164, which requires a defendant who is detained solely for the purpose of awaiting trial be released if his trial does not commence within ninety days of continuous detention. The most commonly invoked provisions of the Speedy Trial Act are those that set the time limits within which a defendant must be charged with a crime and brought to trial. *See* 18 U.S.C. §§ 3161(b), (c). But at issue in this case is the provision regarding defendants who are detained while awaiting trial. *See id.* § 3164.

To accommodate the need for flexibility in certain cases, specified periods of delay may be excluded in computing time for purposes of each time limit set by the Speedy Trial Act. *Id.* §§ 3161(h), 3164(b). The Speedy Trial Act provides an enumerated list of delays that may toll the time periods set by the Act. This

2

enumerated list includes the so-called ends-of-justice provision, which excludes "[a]ny period of delay" based on "findings that the ends of justice served" by the delay "outweigh the best interest of the public *and the defendant* in a speedy trial." *Id.* § 3161(h)(7)(A) (emphasis added).

Paul Francisco Torres III has been detained awaiting trial since August 26, 2019. His trial has been delayed and his detention prolonged as a result of the district court's findings that the "ends of justice" served by avoiding the serious public health risks presented by holding a trial during the COVID-19 pandemic outweighed Torres's right to a speedy trial. Torres now appeals the district court's denial of his motion for release from pretrial detention. Torres does not dispute that his trial was rightfully delayed as a result of the COVID-19 pandemic pursuant to the ends-of-justice provision. Instead, he argues that the district court erred in concluding that because the ends of justice justified delaying his trial, the ends of justice necessarily justified prolonging his pretrial detention. According to Torres, a continuance that results in extending a defendant's pretrial detention requires a "significantly different" ends-of-justice analysis under the Speedy Trial Act. Alternatively, Torres asserts that due process mandates his release because the length of his pretrial detention exceeds the limits of what due process can tolerate.

We hold that Torres's pretrial detention is consistent with the Speedy Trial Act. This holding is two-fold. First, we conclude that because the plain text of

§ 3161(h)(7) requires consideration of the best interest of the defendant in a speedy trial, an ends-of-justice analysis will necessarily include consideration of whether the defendant is detained. *See United States v. Olsen*, __ F.3d __, No. 20-50329, at 17–18 (9th Cir. 2021). Second, we conclude that § 3164(b) unambiguously provides that time properly excluded under § 3161(h) is properly excluded from § 3164. Because the record suggests that the district court considered Torres's detention in granting the ends-of-justice continuances here, Torres's pretrial detention was properly tolled under the Speedy Trial Act. We further conclude that due process does not yet require Torres's release, but observe that the length of Torres's pretrial detention is likely approaching the outer bounds of due process.

## I.    Factual and Procedural Background

On June 7, 2019, Torres was involved in a traffic stop. At the time of the stop, Torres was subject to post-release supervision with conditions permitting a warrantless search, and he had an outstanding arrest warrant for failing to report, in violation of his probation. A search of Torres and his belongings revealed two rounds of ammunition and approximately forty-six grams of methamphetamine. Torres was taken to the police station, where he was *Mirandized* and subsequently admitted to possessing the methamphetamine. Torres was indicted on federal charges for possession with intent to distribute approximately forty-six grams of methamphetamine, 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii), and being a felon in

4

possession of ammunition, 18 U.S.C. § 922(g)(1). Prior to his arrest in this case, Torres had been convicted of five felonies: possession of marijuana for sale in 2002, assault with a deadly weapon in 2006, prisoner in possession of a weapon in 2007, possession of a controlled substance in 2013, and possession of brass knuckles in 2015. As a result of Torres's criminal history, he faces a mandatory minimum sentence of five years if convicted. *See* 21 U.S.C. § 841(b)(1)(B)(viii).

Torres made his first appearance in court for the instant charges on August 26, 2019. Because Torres was charged with a controlled substance offense for which the maximum term of imprisonment exceeded ten years, he was required under the Bail Reform Act to rebut the presumption that no bail conditions would reasonably assure his appearance at court hearings and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). The presiding magistrate judge found that Torres failed to rebut the presumption. She reasoned that there was a high likelihood Torres would fail to appear on account of his apparent substance abuse, and that his prior convictions indicated a danger to the community if Torres were released. Torres was ordered detained pending trial, which was set for October 22, 2019.

On October 3, 2019, the parties stipulated to continue the trial date to February 11, 2020, due to scheduling conflicts for Torres's counsel. The district court granted the continuance on October 4, 2019. On December 11, 2019, the parties again stipulated to continue the trial date to April 7, 2020, due to additional scheduling

5

conflicts; the district court granted the stipulation the same day. The parties further stipulated that the time from October 22, 2019, to April 7, 2020, was excludable time pursuant to the "ends-of-justice" provision of Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(7).

On March 13, 2020, in response to the COVID-19 pandemic, the Central District of California issued a general order suspending jury selection and jury trials. *See* C.D. Cal. General Order No. 20-02. A subsequent order—extending the suspension of jury trials after a significant increase in COVID-19 infections, hospitalizations, and deaths—reasoned that conducting jury trials would likely "place prospective jurors, defendant[s], attorneys, and court personnel at unnecessary risk. Therefore, . . . suspending criminal jury trials in the Central District of California . . . serves the ends of justice and outweigh[s] the interests of the public and the defendants in a speedy trial." *See* C.D. Cal. General Order No. 20-09. The COVID-19 pandemic and related court closures have resulted in five continuances of Torres's trial. Torres did not oppose the first two, which together continued Torres's trial from April 7, 2020, to July 7, 2020. The district court also found this time excludable pursuant to the ends-of-justice provision of the Speedy Trial Act.

Torres did, however, oppose the next three continuances, which the government sought on June 3, 2020, August 14, 2020, and October 20, 2020. The

district court granted each continuance, concluding that it could not summon jurors into the courthouse to hold a trial pursuant to the general orders suspending jury trials to prevent the spread of COVID-19. These three continuances—granted pursuant to the Speedy Trial Act's ends-of-justice provision—continued Torres's trial from July 7, 2020, to February 16, 2021. The district court has since granted another continuance, over Torres's objection, moving Torres's trial date to May 25, 2021.

Torres began pursuing his release from pretrial detention in June 2020, after the district court granted the third COVID-related continuance—which was the first continuance Torres opposed. Torres received a detention-review hearing before the Magistrate Judge in which Torres argued that he had a new surety to secure his release under 18 U.S.C. § 3142(c) and that the intervening pandemic had resulted in undue delay of his trial. The Magistrate Judge denied Torres's request, reasoning that although she "feel[s] for the defendant," there was "just not enough change in circumstances" to warrant overturning the court's previous finding that the presumption against release had not been overcome.

Torres requested that the district court review the Magistrate Judge's ruling. After hearing argument, the district court acknowledged that "Mr. Torres can't be detained forever just because we have the Corona virus," but concluded that "the defense has not met its burden to demonstrate that Mr. Torres is not a flight risk or

a danger to the community." The district court denied Torres's request for release. Torres asked the district court to reconsider his detention in September 2020, arguing that what constitutes excusable delay under the Speedy Trial Act's ends-of-justice provision for purposes of trial may not necessarily constitute excusable delay for purposes of pretrial detention. The district again denied Torres's request, reasoning that its prior orders to continue Torres's trial date under the ends-of-justice provision also tolled the ninety-day clock on Torres's pretrial detention under the express terms of the Speedy Trial Act. The district court further noted that that the evidence still supported finding Torres was a flight risk and posed a danger to the community.

Torres again moved for his release in November 2020, and the district court denied Torres's motion on January 7, 2021. Torres argued that he should be released under the Speedy Trial Act because he had been in custody for more than ninety days, even when all appropriate tolling was considered and, alternatively, because the Due Process Clause independently prohibited his ongoing detention. Torres's first argument, pertaining to § 3164 in the Speedy Trial Act, contended that the § 3161(h)(7)(A) ends-of-justice analysis is different for purposes of § 3164, which governs the presumptive ninety-day limit on pretrial detention, than for purposes of § 3161, which governs the presumptive seventy-day limit for commencing trial. The district court declined to adopt this rationale. It noted that the Ninth Circuit has already stated that time "properly excluded under the 'ends of justice' continuance

8

[is] also excluded from the [section 3164] calculation," and that this conclusion was supported by the text of the statute and its legislative history. The district court also concluded that Torres's then-sixteen-month detention did not offend due process, reasoning that the government presented strong evidence that Torres was a flight risk and posed a danger to the community. Torres filed an appeal pursuant to Federal Rule of Appellate Procedure 9(a). We have jurisdiction pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291, and we affirm.

## II.    Standard of Review

"We review the district court's interpretation and application of the Speedy Trial Act de novo," *United States v. McCarns*, 900 F.3d 1141, 1143 (9th Cir. 2018) (internal citation and quotation marks omitted), but we review factual findings supporting an "ends of justice" exclusion of time for clear error, *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1153 (9th Cir. 2000). We review de novo whether a defendant's due process rights were violated.[1] *United States v. Torres*, 828 F.3d

---

[1] The government contends that under *United States v. Gasca-Ruiz*, 852 F.3d 1167 (9th Cir. 2017) (en banc), the district court's application of law to the facts should be reviewed for abuse of discretion. In *Gasca-Ruiz*, we held that "a district court's application of the Sentencing Guidelines to the facts of a given case should be reviewed for abuse of discretion." *Id.* at 1170. The government's attempt to extend *Gasca-Ruiz* to hold that whenever this Court is reviewing another court's application of law to facts the standard is abuse of discretion is not supported by our case law. The precedent in this Circuit instructs that alleged constitutional violations are reviewed de novo. *See, e.g.*, *United States v. Walker*, 953 F.3d 577, 578 n.1 (9th Cir. 2020); *see also Nordstrom v. Ryan*, 856 F.3d 1265, 1269 (9th Cir. 2017) (explaining that "mixed questions of law and fact implicating constitutional rights" are reviewed de novo) (citation omitted).

9

1113, 1118 (9th Cir. 2016) (citing *United States v. Ridgway*, 300 F.3d 1153, 1155 (9th Cir. 2002)).

### III.    Analysis

Torres has been detained since August 2019 awaiting trial.  While some of this delay is attributable to Torres, the bulk of it is a result of the persisting COVID-19 pandemic.  Torres asks us to determine whether the Speedy Trial Act or the Due Process Clause require his release, or in his words, "prohibit Torres's lengthy, ongoing, and indefinite detention."[2]

### A. Speedy Trial Act

### 1.  Statutory Framework

Torres, like all criminal defendants, is presumed innocent until or unless he is convicted of the charged offenses.  *Betterman v. Montana*, 136 S. Ct. 1609, 1613–14 (2016).  "Reflecting the concern that a presumptively innocent person should not languish under an unresolved charge, the Speedy Trial Clause [of the Sixth Amendment] guarantees 'the *accused*' 'the right to a speedy . . . *trial*.'"  *Id.* at 1614 (emphasis in original) (quoting U.S. Const. amend. VI).  "Congress passed the

---

[2] The Central District issued a general order on April 15, 2021 explaining that jury trials will commence in the Western Division, where the presiding judge in this action sits, on June 7, 2021. (Doc. 25, Ex. A.).  However, this movement towards trial does not moot the questions before us— (1) whether the district court erred in excluding time from the ninety-day detention clock, and (2) whether due process mandates Torres's immediate release.

Speedy Trial Act of 1974 to give effect to the [S]ixth [A]mendment right." *Id.* at 1616 (internal citations and quotation marks omitted).

Three provisions in the Speedy Trial Act impose time limits on the prosecution of a criminal case. First, 18 U.S.C. § 3161(b) requires that an individual be charged "within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (the "thirty-day charging clock"). Second, 18 U.S.C. § 3161(c) requires that the trial of a defendant commence "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer . . . , whichever date last occurs." *Id.* § 3161(c)(1) (the "seventy-day trial clock"). If trial does not begin within the requisite time and the defendant moves for dismissal prior to trial, the court must dismiss the indictment. *Id.* § 3162(a)(2). Third, 18 U.S.C. § 3164(b) provides that the trial of any defendant incarcerated awaiting trial "shall commence not later than ninety days following the beginning of such continuous detention[.]" *Id.* § 3164(b) (the "ninety-day pretrial detention clock"). Generally, courts must release any defendant from pretrial detention after ninety days of detention. *Id.* § 3164(c).

Both the seventy-day trial clock and ninety-day pretrial detention clock may be tolled by the causes for delay enumerated in 18 U.S.C. § 3161(h). Section 3161(h) "includes a long and detailed list of periods of delay that are excluded in computing

11

the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* 18 U.S.C. § 3161(h). Relevant here is § 3161(h)(7), commonly referred to as the "ends-of-justice" provision, which excludes "[a]ny period of delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). Section 3164(b) adds that "[t]he periods of delay enumerated in section 3161(h) are excluded in computing the [ninety-day detention clock]." 18 U.S.C. § 3164(b). The relationship of these tolling provisions is the focus of this inquiry.

## 2. Statutory Interpretation

Torres's primary argument regarding the Speedy Trial Act is that the ends-of-justice analysis required by § 3161(h)(7)(A) is "context-specific" and different when applied to § 3164—the ninety-day pretrial detention clock—than for § 3161(c)—the seventy-day trial clock. In other words, according to Torres, where the court finds the ends of justice permit a trial continuance under § 3161, that finding should not necessarily toll § 3164's ninety-day limit on pretrial detention.[3] The government asserts, as the district court concluded, that the plain language of § 3164(b) does not

---

[3] It bears repeating that Torres assumes on appeal that the district court's continuances pursuant to § 3161(h)(7)(A), which excluded time for the purposes of the seventy-day trial clock, were proper. He argues only that they should not automatically apply under § 3164(b) to toll the ninety-day detention clock.

require a separate analysis. We agree with the government and we add that the plain language of the § 3161(h)(7) ends-of-justice analysis necessarily includes consideration of a defendant's detained status.

Our interpretation of a statute begins with the statutory text, and unless otherwise defined, terms are generally given their ordinary meaning. *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). This case asks us to interpret several provisions of the Speedy Trial Act. The first provision is § 3161(h), which provides for a number of excludable delays.[4] The specific "excludable delay" at issue is the ends-of-justice exclusion, § 3161(h)(7), which provides that "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action *outweigh the best interest of the public and the defendant in a speedy trial*. . . ." shall be excluded in computing the time within which the trial must commence. *Id.* § 3161(h)(7)(A) (emphasis added). The last provision implicated here is § 3164(b), which provides, "[t]he periods of delay enumerated in section 3161(h) are excluded in computing the time limitation" for pretrial detention.

---

[4] These enumerated periods of delay include, among others: (1) delays resulting from other proceedings concerning the defendant; (2) delays during which prosecution is deferred pursuant to an agreement with the defendant; (3) delays resulting from the unavailability of the defendant or an essential witness; (4) delays resulting from the defendant's mental incompetence or physical inability to stand trial; (5) delays when the government moves to dismiss an indictment and then files charges against the defendant for the same offense; and (6) "reasonable periods of delay" when the defendant is joined with a codefendant whose time for trial has not yet lapsed. 18 U.S.C. § 3161(h).

The government asserts that § 3164(b) plainly provides that exclusions of time under § 3161(h)(7) are also excluded from the ninety-day detention clock in § 3164. The district court agreed, relying on the text of § 3164(b) and our prior decision in *United States v. Lewis*, 980 F.2d 555, 564 (9th Cir. 1992) to support its conclusion. In *Lewis*, we stated that time properly excluded from § 3161(c) pursuant to the ends-of-justice provision was also excluded from § 3164. *See* 980 F.2d at 564 ("In calculating the 90 days, delays under § 3161(h) are excluded. Thus, the 41 days properly excluded under the 'ends of justice' continuance are also excluded from the calculation here.") (internal citation omitted), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010). And even though *Lewis* did not engage in a reasoned statutory-construction analysis, having conducted that analysis here, we reach the same result.[5]

First, we look to the text of § 3161(h)(7). When deciding whether a particular delay may be excluded from the seventy-day period allowed for commencing trial, the statute requires district courts to determine whether the ends of justice would be served by delaying the trial. *See* § 3161(h)(7). Specifically, § 3161(h)(7) requires a particularized analysis of whether the ends of justice served by the continuance outweigh the best interests of the defendant in a speedy trial. Because the statute

---

[5] *See Estate of Saunders v. Comm'r of Internal Revenue*, 745 F.3d 953, 960–61 (9th Cir. 2014) ("[I]n our circuit, statements made in passing, without analysis, are not binding precedent.") (internal citations, alterations, and quotation marks omitted).

requires consideration of the defendant's best interest in a speedy trial, we can envision no circumstance in which a district court could properly fail to consider a detained defendant's status when addressing a motion to continue the trial. We do not suggest the defendant's detained status would be dispositive of a motion to continue, but the statute requires a defendant's pretrial detention be considered.

With that said, the statutory command of § 3164 is unambiguous—delays excluded under the § 3161(h)(7) ends-of-justice provision are also excluded when calculating the ninety-day detention clock.[6] Torres's contention that "significantly different ends-of-justice analyses apply to tolling of the trial and [pretrial] detention limits" ignores the plain language of § 3164(b). We agree with Torres only to the extent that he asserts the length of a defendant's ongoing pretrial detention is critical context when a district court conducts an ends-of-justice analysis, which as we just explained expressly requires the district court to weigh "the interests of the defendant in a speedy trial." Where a defendant is detained, a § 3161 ends-of-justice analysis

---

[6] When § 3164 was first enacted it did not include the provision in § 3164(b) incorporating the § 3161(h) tolling provisions. *See* Pub. L. No. 93-619, § 101, 88 Stat. at 2081. As a result, a circuit split arose as to whether the § 3161(h) tolling provisions applied to the ninety-day detention clock in § 3164—some courts permitted tolling while others, including this Court, held that detainees must be tried or released after ninety days of continuous detention. *See United States v. Tirasso*, 532 F.2d 1298, 1300 (9th Cir. 1976); *see also United States v. Corley*, 548 F.2d 1043, 1044 (D.C. Cir. 1976). To resolve the split, Congress amended § 3164 to include the language: "The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section." 18 U.S.C. 3164(b); Speedy Trial Act Amendments of 1979, Pub. L. No. 96-43, 93 Stat. 327, 329. Therefore, the plain language of § 3164(b) is pertinent to this appeal. The text of the ends-of-justice provision cannot be viewed in isolation.

15

*includes* consideration of the defendant's detained status, but nothing suggests that a defendant's detained status is considered *differently* when an ends-of-justice continuance is applied to § 3164.

Torres argues that the application of § 3164(b) in *Lewis*, and advanced by the government here, leads to absurd and unconstitutional results.[7] *See United States v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010) ("If the plain language of a statute renders its meaning reasonably clear, [we] will not investigate further *unless* its application leads to unreasonable or impracticable results.") (emphasis added) (citation and quotation marks omitted). Torres first points to the canon against absurd results and highlights that the government has thirty days to file an indictment after a defendant's arrest and seventy days to bring him to trial after the indictment. 18 U.S.C. §§ 3161(b), (c)(1). Separately, the trial of a continuously incarcerated defendant must begin within ninety days or he must be released on bail. *Id.* § 3164(b). Therefore, if § 3161(h)'s tolling provisions always apply in exactly the same way to the thirty-day charging clock, the seventy-day trial clock, and the ninety-day detention clock, then for a defendant who is detained from the day of his arrest, the only benefit of § 3164 is that he might be released ten days before his trial,

---

[7] Torres also argues that the legislative history of § 3164(b) supports his argument. However, because we do not find the plain text of § 3164(b) to be ambiguous, we need not consult the legislative history. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1750 (2020) ("[L]egislative history can never defeat unambiguous statutory text."); *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("Even [courts] who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'") (citation omitted).

assuming the government takes the maximum amount of time to charge and try him.[8]

Torres argues this "trivial" benefit constitutes an absurd result.

The government acknowledges that § 3164 "may be largely vestigial and rarely invoked," but a trivial benefit is still a benefit and the absurdity canon is an extremely high bar. *In re Hokulani Square, Inc.*, 776 F.3d 1083, 1088 (9th Cir. 2015) ("The absurdity canon . . . is confined to situations where it is *quite impossible* that Congress could have intended the result . . . and where the alleged absurdity is so clear as to be obvious to most anyone.") (emphasis added) (internal citation and quotation marks omitted); *see also Crooks v. Harrelson*, 282 U.S. 55, 60 (1930) ("[T]o justify a departure from the letter of the law upon [the absurdity] ground, the absurdity must be so gross as to shock the general moral or common sense" and "there must be something to make plain the intent of Congress that the letter of the statute is not to prevail."). Our interpretation of § 3164 does not lead to absurd results.

Torres next relies on the canon of constitutional avoidance, which requires a court to construe an ambiguous statute in a manner that avoids serious questions about its constitutionality. *United States v. Davis*, 139 S. Ct. 2319, 2332 n.6 (2019).

---

[8] This result is reached by adding the thirty-day charging clock and the seventy-trial clock, to reach a combined period of one hundred days to bring a defendant to trial. When the one hundred days is compared to the ninety-day detention clock, the defendant is released only ten days before his trial, as Torres contends.

But this canon applies only "when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction, [one constitutional and one not]; and the canon functions as a *means of choosing between them.*" *See Clark v. Martinez*, 543 U.S. 371, 385 (2005) (emphasis in original). The relevant provisions of the Speedy Trial Act are not susceptible to an unconstitutional interpretation. To be clear, the dispute here concerns whether the Speedy Trial Act—particularly § 3161(h)(7)(A) and § 3164(b)—requires a district court to engage in a separate ends-of-justice analysis before excluding time from the ninety-day detention clock. Prolonged pretrial detention may raise constitutional concerns, but Torres does not argue that an ends-of-justice inquiry tailored uniquely toward extending his time in pretrial detention would result in his release or even more generally resolve the constitutional questions he raises. Accordingly, the canon of constitutional avoidance is not applicable here. *See Almendarez-Torres v. United States*, 523 U.S. 224, 238–39 (1998) (explaining that a court need not apply the doctrine of constitutional avoidance where the court does not gravely doubt that the statute is constitutional even if the statute poses a significant constitutional question).

Torres's best authority that a separate ends-of-justice analysis is required to exclude time under § 3164(b) is the Tenth Circuit's decision in *United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986). In *Theron*, the defendant was indicted along with eleven others on sixty-four counts of conspiracy and mail fraud. *Id.* at

1511. Theron was deemed a flight risk and held without bail while his ten codefendants were released. *Id.* The district court granted an eight-month ends-of-justice continuance requested by Theron's codefendants, but opposed by Theron, due to the case's complexity and need for time to prepare a defense. *Id.* Theron sought release pending trial, citing § 3164. *Id.* at 1512.

The Tenth Circuit concluded that the delay due to the continuance was excludable for purposes of the seventy-day trial clock under the § 3161(h) provision excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." *Id.* at 1514 (quoting 18 U.S.C. § 3161(h)(6)).[9] But the Tenth Circuit further suggested that "the 'reasonable delay' exclusion . . . has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises." *Id.* at 1516. The Tenth Circuit reasoned:

> What might be a reasonable delay to accommodate conservation of public resources by trying codefendants together as an exception to the Speedy Trial Act's seventy-day limit might become unreasonable when a defendant is incarcerated for more than ninety days without a chance to make bail. Thus it is possible, as here, that subsection (h)[(6)] will not require dismissal of the indictment but will require that the defendant be tried or released.

---

[9] *Theron* addressed an earlier version of the statute in which the ends-of-justice provision was located at § 3161(h)(8), as opposed to its current position at § 3161(h)(7). Similarly, in *Theron*, the provision permitting a reasonable delay for cases involving codefendants was formerly § 3161(h)(7) but is now § 3161(h)(6).

19

*Id.* The Tenth Circuit also noted that if it "did not construe the statute to require release or trial sooner than the dates the trial court ha[d] set," Theron's continued detention would present serious constitutional questions, and "[t]here is a strong preference for construing a statute to avoid constitutional questions." *Id.* (citing *United States v. Clark*, 445 U.S. 23, 27 (1980)). Accordingly, determining that Theron's pretrial detention was "too long," the Tenth Circuit ordered that Theron "be released on bond with other appropriate restrictions or tried within the next thirty days." *Id.* at 1516–17.

Torres asserts that *Theron* supports his view that the ends-of-justice provision in § 3161(h)(7) is inherently context-specific, because what satisfies the "ends of justice" is different when the issue is whether the trial should be postponed versus whether the defendant should remain in custody while the trial is delayed. But because we agree that a defendant's detained status may influence the ends-of-justice analysis under § 3161(h)(7), neither the result nor the reasoning of *Theron* is inconsistent with the result we reach today. Under our read of the statute, if two defendants' trials are joined and either of them is in pretrial detention, that fact must be considered when deciding whether the ends of justice support a continuance. There is no need for "a different meaning and application" of the ends-of-justice provision under § 3164. In short, *Theron*'s consideration of an entirely different

20

excludable delay, applicable only in multi-defendant actions, does not inform our analysis.

At bottom, the text of § 3164(b) requires that time excluded under § 3161(h) is excluded for purposes of § 3164. Our court and others have interpreted § 3164(b) to mean what it says. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 360 (2019) ("We must presume that Congress says in a statute what it means and means in a statute what it says there.") (internal quotation marks and citation omitted). We find no reason to deviate from the plain text of the statute by holding that § 3164(b) requires a different analysis before time excluded under § 3161(h)(7) is excluded under § 3164(b). Moreover, in light of our holding that § 3161(h)(7) requires a district court to consider a defendant's detained status in weighing the ends of justice, it is not clear what more a district court would need to consider if Torres's proposed separate analysis was required. To be sure, Torres failed to articulate what more he believes the district court should have considered in making its ends-of-justice findings here.[10]

Accordingly, we conclude that the district court's orders continuing Torres's trial date under 18 U.S.C. § 3161(h)(7) necessarily accounted for his pretrial

---

[10] To the extent Torres argues the district court failed to consider his pretrial detention status when it decided that Torres's time in detention was excluded based on § 3161(h)(7)(A), that argument is unsupported by the record. The district court was well aware of Torres' detention status, having previously denied Torres's request for release. There is no indication that the district court failed to consider Torres's interest in being free from prolonged pretrial detention when it considered whether the ends of justice justified a continuance.

detention and excluded time from the ninety-day detention clock in § 3164 by virtue of § 3164(b). When proper tolling is considered, Torres has not yet been in pretrial detention for a period longer than ninety days. The Speedy Trial Act, therefore, does not require Torres to be released at this time.

To be sure, the Speedy Trial Act is not foolproof protection against prolonged pretrial detention. *See United States v. Accetturo*, 783 F.2d 382, 387–88 (3d Cir. 1986) (explaining that due to excludable time "the Speedy Trial Act might not work perfectly well to protect against lengthy incarceration," therefore, in some situations "the length of the defendant's pretrial detention might not survive a proper due process challenge") (internal quotation marks and citation omitted). As Torres himself illustrates, there are other remedies on which a defendant in Torres's position may rely. The first is a defendant's right to seek revocation of his pretrial detention at any time. *See* 18 U.S.C. § 3145(b). The second is due process, which as explained below prevents unconstitutionally lengthy pretrial detention.

**B. Due Process**

It is undisputed that at some point, pretrial detention can "become excessively prolonged, and therefore punitive," resulting in a due process violation. *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987). The point at which detention constitutes a due process violation requires a case-by-case analysis. *United States v. Gelfuso*, 838 F.2d 358, 359–60 (9th Cir. 1988) (adopting case-by-case analysis

22

and declining to express a "view as to the point at which detention in a particular case might become excessively prolonged and violate due process"). A due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose. *Salerno*, 481 U.S. at 747 (citation omitted). The only Ninth Circuit case law we have for guidance on this issue is *Gelfuso*, in which we looked to "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued." 838 F.2d at 359. Other courts, including the district court in this case, have also considered the strength of the evidence justifying detention under the Bail Reform Act, which we find appropriate. *See, e.g.*, *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012); *United States v. Zannino*, 798 F.2d 544, 547–48 (1st Cir. 1986) (per curiam); *Accetturo*, 783 F.2d at 388. Therefore, in evaluating whether a due process violation has occurred, we weigh the following factors: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act.

### 1. Length of Defendant's Pretrial Detention

Torres has been detained since August 26, 2019, and his trial is currently set for May 25, 2021. Assuming his trial begins in May 2021, he will have been

23

detained for twenty-one months. This lengthy detention has been prolonged over Torres's consistent objection, asserted for the first time over one year ago, and his persistent requests to be released with appropriate conditions. The government conceded at oral argument that the length of Torres's pretrial detention weighs in favor of recognizing a due process violation. We agree. *See United States v. Myers*, 930 F.3d 1113, 1119 (9th Cir. 2019) (explaining that "delays approaching one year are presumptively prejudicial" for Sixth Amendment purposes) (citation omitted); *see also United States v. Gonzales Claudio*, 806 F.2d 334, 340–41 (2d Cir. 1986) (describing the ninety-day period as a "point of reference in our consideration of the constitutional limit on such detention").

## 2. Prosecution's Contribution to Delay

*Gelfuso* instructs that we must also consider "the extent to which the prosecution bears responsibility for the delay that has ensued." 838 F.2d at 359. Torres does not dispute that the prosecution bears no responsibility for the delay in his case. The first two continuances were stipulated to for the benefit of Torres's counsel to adequately prepare his case and the remainder of the continuances were a direct result of the COVID-19 pandemic.[11] This factor weighs against finding a due process violation.

---

[11] Torres briefly contends that in the event this court determined in *United States v. Olsen*, __ F.3d __, No. 20-50329 (9th Cir. 2021) that the Central District "knowingly and willfully" made "a

24

### 3. Evidence Supporting Detention under Bail Reform Act

In addition to the length of detention and the fault of the prosecution, many of our sister circuits and district courts within this Circuit also consider the strength of the evidence supporting the defendant's detention under the Bail Reform Act factors set forth in 18 U.S.C. § 3142(g). *See, e.g.*, *United States v. Ailemen*, 165 F.R.D. 571, 581 (N.D. Cal. 1996) (collecting cases). We agree these factors are instructive.[12] They include:

(1) the nature and circumstances of the offense charged . . .;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—[as relevant here] the person's . . . history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . . whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

Here, the district court consistently found that Torres has a documented history of substance abuse, clear access to ammunition, a significant criminal history

---

substantive policy decision to suspend the constitutional rights of . . . every . . . defendant unwilling to waive time," then this factor should weigh in favor of Torres. *See United States v. Infelise*, 934 F.2d 103, 104–05 (7th Cir. 1991) (explaining that the defendant "must show that either the prosecution *or the court* has unnecessarily delayed in bringing the case to trial") (emphasis added). This Court did not reach such a conclusion in *Olsen* and therefore need not determine the relevance court-caused delays have in the due process inquiry.

[12] We do not read *Gelfuso* to hold that the two factors mentioned—length of delay and prosecution's fault—are the only factors that may be considered in this due process analysis.

including violent offenses, and a history of failing to appear. These findings, coupled with the strength of the government's case in light of Torres's *Mirandized* confession, and the seriousness of Torres's current charges, support the conclusion that the Bail Reform Act factors weigh strongly against a due process violation. Torres all but concedes this assessment of the Bail Reform Act factors is correct.

### 4. Balance of Factors

On balance, we conclude that Torres's twenty-one-month detention does not yet violate due process, but we caution that the length of Torres's detention is approaching the limits of what due process can tolerate. The length of Torres's pretrial detention is significant under any metric and is deeply troubling. But the lack of any prosecutorial contribution to the delay and the strength of the evidence supporting Torres's detention lead us to conclude that Torres's detention is rationally connected to a regulatory purpose—preventing danger to the community and ensuring Torres will appear as required. *See Salerno*, 481 U.S. at 747 (noting that "preventing danger to the community" is a regulatory interest supporting pretrial detention under the Bail Reform Act); *see also United States v. Millan*, 4 F.3d 1038, 1043–44 (2d Cir. 1993) (including assurance that a defendant will not flee before trial as a regulatory interest supporting pretrial detention). However, all parties agree that at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried. *See Briggs*, 697 F.3d at 103

("There is no bright-line limit on the length of detention that applies in all circumstances; but for every of set of circumstances, due process does impose some limit."). And if Torres is not tried by his current trial date of May 25, 2021, the district court and the prosecution must consider whether further prolonging Torres's pretrial detention crosses the line from regulatory to punitive detention.

## IV.  Conclusion

We affirm the district court's conclusion that time properly excluded under the § 3161(h)(7)(A) ends-of-justice provision is expressly excluded from the ninety-day detention clock in § 3164 pursuant to § 3164(b). Because the ends-of-justice provision under § 3161(h)(7) requires consideration of the defendant's interest in a speedy trial, a detained defendant's status must be considered before a continuance of trial is granted. Accordingly, once a district court properly excludes time from the trial clock under the ends-of-justice provision, that exclusion applies to the detention clock as well. The plain language of § 3161(h)(7) and § 3164(b) support this conclusion.

We also affirm the district court's conclusion that Torres's detention does not, at this time, violate due process. Our decision to uphold the district court's ruling, however, is not made lightly. Because of the troubling length of Torres's pretrial detention, due process demands that the district court begin Torres's trial or reconsider bail subject to appropriate conditions very soon.

27

**AFFIRMED.**